**Miles A. HAMPTON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 7242, 7988.**

District of Columbia Court of Appeals.

Argued Sept. 23, 1974.

Decided July 9, 1975.

---

Jeffrey R. Freund, Washington, D. C., appointed by the court in No. 7988, for appellant. Robert J. Golten, Washington, D. C., was appointed by the court in No. 7242.

Harry R. Benner, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin and C. Madison Brewer, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, KERN and HARRIS, *Associate Judges.*

KELLY, *Associate Judge:*

In thise consolidated appeals from a conviction of burglary in the first degree,[1] appellant argues, in No. 7242, that a motion to suppress his on-the-scene and in-court identifications by the complaining witness, as well as the clothing he was wearing when arrested, was erroneously denied, and

1. D.C.Code 1973, § 22–1801(a).

that the trial court's refusal to rule on the admissibility for impeachment purposes of a five-year-old attempted housebreaking conviction before appellant decided whether to take the stand was also error.

## I

At the hearing on appellant's pretrial motion to suppress, the complaining witness testified that in the early morning hours of July 13, 1972, she was awakened by a noise in the kitchen of her home on Eastern Avenue, N.E. She walked down the hallway to the kitchen, with her german shepherd dog at her side, and from a distance of five to ten feet saw a man standing in front of the kitchen sink. Lights in the bedroom, bathroom and dining room helped illuminate the kitchen, she said, allowing her to get a good look at the man's face. She observed him for approximately fifteen seconds before he fled through the back door. The complainant telephoned the police at once and reported the presence of an intruder whom she described as a Negro male wearing a red shirt and black pants.

Officers Frank Gilbert and Raymond Gilbert testified to the receipt of a radio run relaying the location of the burglary, the description of the burglar given by the complainant, and information that he was last seen going up 50th Street, N.E., heading towards Nash, with a german shepherd in pursuit. The officers apprehended appellant about five minutes later at 49th and Quarles Streets, N.E. He was wearing a red and black print shirt and navy blue pants. The officers returned appellant to 1308 Eastern Avenue,[2] where he was positively identified by the complainant as the man who had entered her home.

2. The testimony is conflicting as to whether appellant was told he need not go with the officers, whether he went voluntarily, or whether he accompanied the officers in the belief that it was the discreet thing to do.

3. No claim of undue suggestivity is pressed on appeal, and we find no error in the court's fur-

At the conclusion of the testimony on the suppression motion, and after argument of counsel, the trial court found that appellant's return to the scene of the crime was voluntary, but that even if it were not, probable cause for his arrest existed when, in response to the radio run, the officers stopped appellant on the street. The court further found that the show-up identification of appellant by the complaining witness was not unduly suggestive.[3]

Contrary to appellant's first claim of error, the trial court was correct in holding that the officers had probable cause to arrest when, within minutes of a reported early morning burglary, they came upon appellant in an area proximate to the scene of the crime, wearing clothing which effectively fit the description given the police by the complaining witness. These simple facts would, in our judgment, cause any reasonably prudent police officer with knowledge that a crime had just been committed to believe that appellant was the perpetrator of that crime.[4] Accordingly, irrespective of the voluntary nature of appellant's return to the scene, the trial judge was not legally required to suppress either the identification testimony of the complainant or the clothing worn by appellant at the time of arrest.

## II

The testimony of the government witnesses at trial was virtually the same as that given on the motion to suppress. On the second day defense counsel requested the court to rule prospectively whether the government would be permitted to impeach appellant with a 1967 attempted housebreaking conviction, prompting the following colloquy:

[DEFENSE COUNSEL]: * * * *

ther finding of an independent source for the in-court identification.

4. *Cox v. United States*, D.C.App., 256 A.2d 917 (1969); *Bell v. United States*, 102 U.S. App.D.C. 383, 254 F.2d 82, *cert. denied*, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958).

Your Honor, for the record, Mr. Hampton has one prior conviction in 1967 for attempted housebreaking; may I inquire, for the record, whether the Government would use that conviction?

THE COURT: It's up to the Government.

[PROSECUTOR]: Your Honor, I think that's a matter of tactics, which I don't think I have to state at this time.

THE COURT: That's right; I don't think he has to disclose that. *Luck* is no longer applicable; they're telling the Judges to stay out of it; there's a specific statute on the point. I can't make him say, sir; that's a tactical decision that he must make. It's up to [the prosecutor], himself, whether he wishes to use it or not, and I don't think it's incumbent upon this Court to make anybody disclose whether they're going to use it or not.

We keep saying it's a search for the truth, but I'm not going to tell [the prosecutor] whether to use it or not; it's up to him. It really is, and I'm not going to make him. So it's up to you how you present your case. [Tr. 169–70.]

■ From the foregoing bench discussion it is not entirely clear whether defense counsel wished to know if the government planned to use appellant's prior conviction to impeach him or whether counsel was requesting the court to rule on the admissibility for impeachment purposes of the prior misdemeanor conviction. If the former, of course the court cannot tell the government which convictions, if any, it

may use for purposes of impeachment so long as statutory requirements governing such use are met. Those requirements, found in D.C.Code 1973, § 14–305, permit impeachment with the use of felony convictions (with exceptions not pertinent) and with those misdemeanor convictions which involve dishonesty or false statements.[5] Therefore, since appellant had been convicted of a misdemeanor, the logical conclusion is that counsel was seeking a ruling on whether a conviction of attempted housebreaking is an impeachable one, and in refusing to rule the trial judge was abdicating his responsibility to the prosecutor.

It is true that the provisions of Section 14–305 severely curtail the discretion of a trial judge to exclude the use of prior convictions to impeach. Because of the amendments to that section, the *Luck*[6] doctrine no longer applies to prosecutions under the District of Columbia Code and the admission of felony convictions, if the prosecution chooses to utilize them, is mandatory. *Davis v. United States*, D.C.App., 313 A.2d 884, 885 (1974). In respect to misdemeanor convictions, however, the court must still determine whether the misdemeanor sought to be used for impeachment involves dishonesty or false statement, an exclusion which Congress intended to apply primarily to offenses of passion and short temper. *Durant v. United States*, D.C.App., 292 A.2d 157, 160 (1972), *cert. denied*, 409 U.S. 1127, 93 S.Ct. 946, 35 L.Ed.2d 259 (1973).

■ A list of offenses which Congress regarded as involving dishonesty or false statement, and thus usable for im-

---

5. D.C.Code 1973, § 14–305(b)(1) reads:
   Except as provided in paragraph (2), for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a criminal offense shall be admitted if offered, either upon the cross-examination of the witness or by evidence aliunde, but only if the criminal offense (A) was punishable by death or imprisonment in excess of one year under the law

under which he was convicted, or (B) involved dishonesty or false statement (regardless of punishment). A party establishing conviction by means of cross-examination shall not be bound by the witness' answers as to matters relating to the conviction.

6. *Luck v. United States*, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).

peachment purposes, is contained in the House Report accompanying the legislation.[7] Attempted housebreaking is included in that list. *Durant v. United States, supra* at 160. As a consequence, while the trial judge was remiss in his obligation to rule on counsel's request, had he done so the result would have been no different. Defendant did not take the stand in his own defense ostensibly, at least in part, because he did not want to chance impeachment by the government. Since his prior conviction for attempted housebreaking was admissible for impeachment purposes, his decision on whether to testify or not would surely have been the same had the trial judge explicitly ruled on its admissibility. Thus, on the record as we read it, the error advanced on appeal was harmless.

### III

In appeal No. 7988 appellant argues that the trial judge's continuing failure to comply with the mandates of this court deprived him of the effective assistance of counsel.

The day following appellant's arrest he was released by the court on his personal recognizance. Over a month later appellant was presented on an unrelated charge of rape and bond was set at $5,000. The required surety bond was posted and appellant was released. At appellant's arraignment on October 10, 1972, before the present trial judge on an eight-count indictment which included both the burglary and the rape offenses, bond was increased to $25,000 despite the absence of any showing of changed circumstances.[8] An interlocutory pretrial appeal to this court of the order setting bond at $25,000 resulted in a

summary reversal and the trial judge was ordered to reinstate the $5,000 bond with whatever nonfinancial conditions, if any, he deemed appropriate.

Notwithstanding this court's order the trial judge reimposed a bond of $25,000, which immediately reactivated the appellate process. In our second order of summary reversal, dated December 27, 1972, the trial judge was directed to forthwith vacate the $25,000 bond order and to reinstate the bond in the sum of $5,000. Despite diligent efforts, however, defense counsel was unsuccessful in obtaining a hearing before the trial judge until January 4, 1973, when the $5,000 bond was reinstated. Consequently, counsel argues he was frustrated in his efforts to have appellant's personal assistance in locating necessary witnesses for the defense at trial, set for one week later. Counsel's own efforts to locate the witnesses had been unsuccessful.

One witness sought by the defense appeared on the day of trial, but counsel complains that he did not have an adequate opportunity to interview the witness or prepare his testimony. The specific contention, presented to the court in a postconviction motion for new trial, is that the witness' testimony would have substantially strengthened appellant's defense of intoxication if there had been an opportunity to interview him before he testified. This appeal is from the denial of that motion.

■■ We do not dispute the general proposition that counsel has a duty to investigate the circumstances of a given case promptly and that in some instances the defendant's assistance in the investigative process may be vital. *United States v.*

---

7. H.R.Rep.No.91–907, 91st Cong., 2d Sess. 62 (1970).

8. The cases were subsequently severed and appellant's conviction of first-degree burglary,

rape and assault with a dangerous weapon stemming from the second episode has been affirmed on appeal. *Hampton v. United States*, D.C.App., 318 A.2d 598 (1974).

*Reese,* 149 U.S.App.D.C. 427, 463 F.2d 830 (1972). We do disagree, however, with appellant's contention in this case that under prevailing standards he was denied effective assistance of counsel. *Angarano v. United States,* D.C.App., 312 A.2d 295, 298–99 (1973), *petition for reconsideration denied,* D.C.App., 329 A.2d 453 (1974); *Bruce v. United States,* 126 U.S.App.D.C. 336, 379 F.2d 113 (1967). *Cf. United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197 (1973). During the 45-day interval between his arrest in July of 1972 and his rearrest in late August, appellant was free on his own recognizance and in a position to assist counsel in locating necessary witnesses. Moreover, after his rearrest in August appellant remained free on bond until his arraignment on October 10, 1972, and there is no reasonable explanation of counsel's failure to seek appellant's assistance in finding defense witnesses during this period.

Unquestionably, the trial court's order increasing appellant's surety bond to $25,000 was decidedly improper, as was its transparent evasion of this court's original order that the $5,000 bond be reinstated. Neither order was the primary cause of counsel's inability to locate witnesses, however, for appellant's assistance was available to counsel during the extended period of time when he was not in custody. Additionally, when the problem appeared to counsel to be acute, custodial release for that purpose [9] was never sought. And finally, one witness sought by counsel appeared at trial and testified as to appellant's sobriety on the night of the alleged crime. Under these circumstances, we are not convinced that the actions of the trial court, however ill-advised, rendered the assistance of appellant's counsel ineffective.

For the foregoing reasons the judgment of conviction on appeal is

*Affirmed.*

9. D.C.Code 1973, § 23–1321(h)(2).