**In the Matter of L. W.**

**No. 11623.**

District of Columbia Court of Appeals.

Argued Nov. 23, 1977.

Decided Aug. 1, 1978.

---

**3.** 40 U.S.C. 270b (1970).

John C. Smuck, Washington, D. C., for appellant.

Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Deputy Corp. Counsel and Ted. P. Gerarden, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

GALLAGHER, Associate Judge.

Appellant was charged, in a petition filed in the Juvenile Branch, Family Division of the Superior Court, with two counts of robbery, D.C.Code 1973, § 22–2901, allegedly occurring at the same time and place on August 30, 1976. Each count related to a different victim—one male and one female. Appellant filed a motion to suppress the government's identification evidence. After a hearing, the trial court denied the motion. Following the conclusion of a fact-finding hearing, the trial court found appellant not guilty of the count alleging robbery of the male but guilty of the count alleging robbery of the female. Appellant makes two contentions: (1) his motion to suppress identification evidence was erroneously denied; and (2) the evidence is insufficient to support the finding of guilty.

At the suppression hearing, the only substantive evidence against appellant came from the testimony of the complainant, Ms. Ronnie Yeskel. Appellant does not dispute her version of the facts giving rise to his conviction, but only disputes the reliability of her identification testimony. Adopting her account of the incident, the following are the pertinent facts. At approximately 1:50 a. m., on August 30, 1976, Ms. Yeskel and a companion were preparing to enter her car when a young man came up to them, asking directions to 21st and P Streets. After her friend responded with the appropriate directions, the young man told them not to move and that this was a robbery. As he made that announcement, two other male youths took the pocketbook of Ms. Yeskel and went through it, taking twenty-five dollars plus change. Ms. Yeskel's friend was struck on the head and fell over the hood of her car. She was then struck in the head and in the face. She screamed, blew her whistle, and started running. The three youths fled down an alley.

The robbery took place in an area lit by street lamps and an adjacent apartment house. Ms. Yeskel had an opportunity to view two of the youths—their faces and features—very closely, from about a foot away. After the robbery she and her friend went to a nearby Seven-Eleven store to find a policeman in order to report the incident. About five to ten minutes later, she related the incident to either a detective or policeman. She described one of the youths as wearing dark clothes, being small, and appearing very young—about ten or eleven years old. She was shown some photographs at her place of employment about two days later by two detectives. From this photographic array, Ms. Yeskel selected two pictures as representing two of her robbers, one being appellant.

One week after the photo array and about nine days after the robbery attempt, the police conducted a lineup at which Ms. Yeskel was present. At the lineup appellant, who was shorter than the other lineup

participants, stood on a box which could not be seen by Ms. Yeskel. The purpose of this procedure was to make all the participants appear to be somewhat the same height. Ms. Yeskel identified appellant as one of the robbers, but noted that he appeared shorter at the time of the robbery.

The trial court, in denying appellant's motion to suppress, noted that

> when the police attempted to produce a line-up with an unusually small youthful looking person being one of the suspects, then that creates a problem as compared to the ordinary age of an adult male or an older juvenile male.[1] Thus they do have a problem getting a similar type person, and in this case there is such a problem. However, I think some effort was made to compensate . . . . You find more people in this lineup than the usual six or seven or eight that normally appears, and in an effort to produce your particular client, he was made taller than he normally is. I think it goes to the authenticity of this particular identification, that the witness did point that out
>
> . . . .
>
> . . . I am seriously considering the fact that there are older people in this line-up, such as Number Seven, Number Three, Number Thirteen, and even Number Fourteen. However, when we compare that against the number of people in this line-up,[2] the previous photographic identification of this particular respondent [appellant L.W.], I think it is fair to say that given all the circumstances, and even the independent recourse that she must have had at the scene of the robbery, that there is very little, if anything . . . for suppressing, that is, refusing to let the lady identify at trial, if she can.
>
> . . . [A] line-up, a show-up or a photographic array and even in a court-

room identification, it is not an antiseptic situation but it is the best we can do under the circumstances.

> . . . I do think that the procedures used were within the range that is required by the courts, and that the motion to suppress is not a frivolous one, but I do think it must respectfully be denied, and that is my ruling.

It is this ruling which appellant challenges as being erroneous because the lineup was so "dangerously suggestive" as to violate due process of law. Appellant correctly states the applicable standard to be whether the lineup procedure employed here was, under the totality of the circumstances, "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).[3]

Our first inquiry is whether the police used an impermissibly suggestive procedure in obtaining the out-of-court identification. *See Manson v. Brathwaite,* 432 U.S. 98, 107, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). This is directed at the lineup identification only, as appellant does not challenge the conduct of the police in connection with the photo array. Appellant argues that he "stood out" in the lineup because he was the only person in the fourteen-person lineup approximating the witness' description of a small, young male who looked ten or eleven years old. He asserts that three factors specifically distinguished him from all other participants in the lineup: (1) height; (2) build; and (3) maturity. He also complains of the use of a box to make him appear taller.

▮ We are concerned here with the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence in *Foster.* Sug-

---

1. Appellant's age was disclosed at the factfinding hearing as then being actually fifteen years, but apparently he was a rather small, youthful looking fifteen.

2. There were fourteen persons in the lineup.

3. Although *Simmons* involved a photo array, the same standard is applicable to lineup and show-up identifications. *Foster v. California,* 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

gestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous.

*Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). "An identification is suggestive when the police conduct it in such a way that the witness' attention is directed to a particular individual as the suspect upon whom the police have focused." *United States ex rel. Goodyear v. Delaware Correctional Center,* 419 F.Supp. 93, 96 (D.Del.1976); *cf. Anderson v. United States,* D.C.App., 364 A.2d 143, 144 (1976); *Skinner v. United States,* D.C.App., 310 A.2d 231, 233 (1973). With those concepts in mind, we have examined the lineup photograph and have concluded that it is unnecessarily suggestive, due to appellant's physical frame and apparent lack of maturity in terms of physical features, as compared to the others who appear substantially older and almost all much larger physically. We might say that the use of the box, as for the use of any props at a lineup, is of questionable propriety and we are certainly not approving here its further use. As we stated in *Herbert v. United States,* D.C.App., 340 A.2d 802, 803–04 (1974),

> we do have some reservations whether it [the use of a box to stand on] is the best means of assuring fair identification. Ability to identify comes from a range of factors and combinations of them. To exclude height by such artificial means can produce inaccuracy. The prevention of a substantial likelihood of irreparable misidentification does not mean that a feature of the suspect must be changed and the change concealed. A fair lineup is not one calculated to trick the witness.

The necessity of carefully constructing lineups is to ensure maximum reliability of an identification which may be the only substantive evidence linking the accused with a crime. We are cognizant that this may often be a difficult task for the police and that there may sometimes be exigencies which excuse less meticulously executed pretrial identification procedures. Here,

the small size and apparent youthfulness of appellant probably created difficulties for the police in finding comparable lineup participants. The police conducted the lineup soon after the crime. There was no apparent urgency or necessity for conducting the lineup that particular day, however, and with only a short delay a better selection of lineup participants doubtless could have been made. Perhaps such youthful-looking, small participants are rarely available. If that be true, it would be a mitigating factor in the conduct of the lineup. There is, however, no evidence of record relating to this factor.

Finding the conduct of the lineup suggestive under these circumstances does not end our inquiry. We must also determine whether, under all the circumstances, that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. *See Manson v. Brathwaite, supra* 432 U.S. at 107, 97 S.Ct. 2243. There, the Supreme Court emphasized that

> reliability is the linchpin in determining the admissibility of identification testimony . . . . The factors to be considered are set out in *Biggers.* 409 U.S. at 199–200, 93 S.Ct. 375. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Id.* at 114, 97 S.Ct. at 2253.

█ Applying those criteria to the facts of this case, we note first Ms. Yeskel's testimony that about five to ten minutes elapsed during the robbery and that the area was lit by street lamps and an immediately adjacent apartment house. She further testified that appellant and another robber were right next to her during the incident—about one foot away—and that she was able to observe their faces and

features very closely. Her prior description of appellant was substantially accurate—*i. e.,* small and youthful looking, although not particularly precise or detailed. The fact that appellant was actually fifteen at the time of the robbery and not ten or eleven years old, as Ms. Yeskel had estimated, does not really weaken the accuracy of her description, since he was still very young looking and ages are often difficult to estimate with precision.[4] The time between the crime and the confrontation was about nine days—a short period of time. An important factor here is that Ms. Yeskel had previously identified appellant from a photo array presented to her only two days after the robbery.

"These indicators of . . . [Ms. Yeskel's] ability to make an accurate identification are hardly outweighed by the corrupting effect of the challenged identification itself." *Manson v. Brathwaite, supra* at 116, 97 S.Ct. at 2253. Although this conclusion is supported by a delicate balancing of the applicable factors, we also note that this was not a case where there was any indication of police pressure on the witness. Consequently, "we cannot say that under all the circumstances of this case there is 'a substantial likelihood of irreparable misidentification.' . . . [*Simmons v. United States,* 390 U.S.] at 384, 88 S.Ct. 967. Short of that point, such evidence is for the jury to weigh." *Manson v. Brathwaite, supra* at 116, 97 S.Ct. at 2254.

We now turn briefly to consider appellant's claim that the evidence is insufficient as a matter of law to support the verdict. The crucial evidence linking this juvenile to the commission of the offense consisted solely of complainant's testimony concerning her two pretrial identifications and her in-court identification of him as one of the perpetrators. That evidence, if credited, as it was, would permit a finding that appellant was guilty beyond a reasonable doubt. We may not reverse a conviction supported by evidence which reasonably permits a finding of guilt. *In re T.T.B., D.C.App.,* 333 A.2d 671, 673 (1975).

*Affirmed.*

---

**4.** Whatever inconsistencies appeared in her testimony were for the trial court to resolve in its determination of the reliability of her identification of appellant and its ruling on the motion to suppress impliedly finds her identification testimony sufficiently reliable to be admissible at trial; thereafter, the "reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury." *Foster v. California, supra* 394 U.S. at 442, n.2, 89 S.Ct. at 1128.