Jerome F. BATES, a/k/a Vernon Bates, Appellant,

v.

UNITED STATES, Appellee.

No. 13596.

District of Columbia Court of Appeals.

Argued May 17, 1979.

Decided July 10; 1979.

Robert Haas, Hyattsville, Md., appointed by this court, for appellant.

F. Joseph Warin, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., Washington, D.C., at the time the brief was filed, and John A. Terry, Michael W. Farrell, and Richard H. Saltsman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before HARRIS, MACK, and FERREN, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant Bates of robbery, D.C.Code 1973, § 22-2901. He now argues that (1) the trial court erred in permitting the government to impeach him under D.C.Code 1973, § 14-305(b)(1)(B) with a prior conviction of unlawful entry, and that (2) the prosecutor, in his closing argument to the jury, improperly implied that defense counsel did not believe his own client's testimony. Finding no reversible error, we affirm.[1]

## I.

Janice Banks, who was twelve years old and lived in Southwest Washington, testified that on April 18, 1977, at approximately 5:30 p. m., she and her thirteen-year-old sister, Dierdre, had been walking near their home. Janice observed a man, later identified as appellant, walking toward her. The man bumped into her, demanded the ten dollar bill she was holding, then grabbed her hand and snatched the bill. Janice reached for the bill and retrieved it, but appellant pulled it once again out of her hand. Dierdre testified that she had seen appellant grab the bill from Janice's hand.

The girls ran home immediately after the incident and told their stepfather, Kenneth Spurlock, what had happened. Spurlock and the girls immediately went outside, where Janice and Dierdre pointed out appellant, who was approximately a block and a half away. Spurlock testified that appellant began to run upon seeing them. Spurlock chased appellant for about five minutes—for three to four blocks—but appellant escaped by climbing a fence. Each witness made an unequivocal in-court identification of appellant.

Appellant presented an alibi defense by calling Junie Moore to the stand. As it turned out, Moore was confused about the time appellant had been with him on the day in question. Appellant then testified in his own behalf and denied robbing Janice Banks, stating that he had been at his apartment during the time when the alleged robbery had occurred. The prosecutor impeached appellant with a prior conviction for unlawful entry. The trial court gave an immediate cautionary instruction, which it repeated to the jury during final instructions.

The jury convicted appellant. On June 14, 1977, the court sentenced him to prison for two to six years but suspended execution of the sentence placing appellant on probation for three years.

## II.

Appellant argues that the trial court erred in permitting the government to impeach him with a prior conviction of unlawful entry. D.C.Code 1973, § 14-305(b)(1) provides, in relevant part, that

for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a criminal offense shall be admitted if offered, either upon the cross-examination of the witness or by evidence aliunde, but only if the criminal offense (A) was punishable by death

1. Appellant also argues, without merit, that the trial court should not have denied his motion to suppress identification testimony by three eyewitnesses. We have examined the photographs used in the array, as well as the photograph of the lineup, and conclude that neither was impermissibly suggestive or created a substantial likelihood of irreparable misidentification. See In re L.W., D.C.App., 390 A.2d 435, 438-39 (1978); Anderson v. United States, D.C. App., 364 A.2d 143, 144 (1976). In any event, we cannot disagree with the trial court's finding that each of the three eyewitnesses had such a clear look at appellant at close range, under good lighting conditions, that the identifications were reliable irrespective of any suggestiveness in subsequent identification procedures. See Manson v. Brathwaite, 432 U.S. 98, 117, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

or imprisonment in excess of one year under the law under which he was convicted, or (B) involved dishonesty or false statement (regardless of punishment).

Section 14–305(b)(1)(A) does not encompass a conviction for unlawful entry, which has a maximum allowable punishment of six months' imprisonment. D.C.Code 1973, § 22–3102. The issue, therefore, is whether § 14–305(b)(1)(B) applies.

Appellant argues that unlawful entry does not involve "dishonesty or false statement." We have reviewed the legislative history of § 14–305(b)(1)(B). Given the congressional view of "dishonesty" at the time that provision was enacted, we conclude that the impeachment was proper. The House Report on the bill which eventually became § 14–305 stated:

> It is the intent of your Committee that the offenses which are excluded from use are primarily those of passion and short temper, such as assault.
>
> The offenses which involve dishonesty or false statement and which may be used in the discretion of the cross-examining party include, but are not limited to, any offense involving fraud, or intent to defraud, larceny, robbery; rape, false pretenses, forgery, uttering, embezzlement, housebreaking, or burglary; receiving stolen property, sales of narcotic and depressant and stimulant drugs; unauthorized use of a motor vehicle; taking property without right; procuring; or any attempt to commit or any assault with intent to commit any of the above offenses. [H.R.Rep.No. 907, 91st Cong., 2d Sess. 62 (1970) (citations omitted).]

Congress, therefore, in legislating for the District of Columbia, had an expansive view of "dishonesty or false statement"; the exclusion under subsection (b)(1)(B) is virtually limited to convictions of crimes involving "passion and short temper."[2]

This court, accordingly, has excluded prior convictions for acts of passion or short temper from § 14–305(b)(1)(B) but has included almost all other types of crimes. *Compare United States v. Akers*, D.C.App., 374 A.2d 874, 878 (1977) (assault does not involve dishonesty or false statement) *with Hampton v. United States*, D.C.App., 340 A.2d 813, 816–17 (1975) (attempted housebreaking is impeachable offense under § 14–305(b)(1)(B) *and Williams v. United States*, D.C.App., 337 A.2d 772, 775–76 (1975) (carrying a pistol without a license is an impeachable offense under § 14–305(b)(1)(B)) *and Durant v. United States*, D.C.App., 292 A.2d 157, 160–61 (1972), *cert. denied*, 409 U.S. 1127, 93 S.Ct. 946, 35 L.Ed.2d 259 (1973) (possession of narcotics is an impeachable offense under § 14–305(b)(1)(B)).

We recently have held that the unlawful entry statute, D.C.Code 1973, § 22–3102

> prohibits the act of entering or remaining upon any property when such conduct is both without legal authority and against the expressed will of the person lawfully in charge of the premises.

*Leiss v. United States*, D.C.App., 364 A.2d 803, 806 (1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977); *see Smith v. United States*, D.C.App., 281 A.2d 438 (1971).[3] This crime, therefore, involves

---

2. The United States Court of Appeals for the District of Columbia Circuit had earlier construed the predecessor of § 14–305 and stated:

> In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity.

[*Gordon v. United States*, 127 U.S.App.D.C. 343, 347, 383 F.2d 936, 940 (1967), *cert. de-*

*nied*, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968) (footnote omitted)].

3. D.C.Code 1973, § 22–3102, imposes criminal liability on

> [a]ny person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property, or part of such dwelling, building or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand

"dishonesty" akin to housebreaking, *see* D.C.Code 1973, § 22–1801(b) (second degree burglary), which was a specific example of an impeachable conviction given by the House Committee quoted above. *See Hampton, supra.*[4] Thus, the trial court did not err in permitting the government to impeach appellant under D.C.Code 1973, § 14–305(b)(1)(B), with a prior conviction of unlawful entry.[5]

### III.

Appellant argues, finally, that the prosecutor's closing argument was improper because it implied that defense counsel did not believe appellant had given credible testimony. Defense counsel, in closing argument, had reviewed the testimony of the alibi witness, Junie Moore, but had not argued appellant's own testimony to the jury.

Thereafter, in his closing argument, the prosecutor told the jury:

> Defense counsel rather charitably describes Mr. Moore's testimony as being rather sketchy. Well, yes, it was rather sketchy, but not for the reasons that were outlined by defense counsel. And, you must wonder, must you not, why defense counsel never even mentions the testimony of his own client. Why he never even discussed with you what Mr. Bates, himself said. Why is that? Consider that question, ladies and gentlemen.

Defense counsel immediately objected, but the trial court overruled the objection.

 We agree that the jury might have interpreted the prosecutor's remarks as intimating that defense counsel did not believe his own client's story. It is well established that the prosecutor is not per-

---

of the lawful occupant, or of the person lawfully in charge thereof . . . .

4. Appellant attempts to distinguish unlawful entry from housebreaking on the ground that the former may be limited to refusal to quit premises lawfully entered and, in any event, that unlawful entry does not require an intent to commit a crime within the dwelling. Convictions, however, are impeachable or not under § 14–305 by reference to categories of crime, not to the facts behind a particular conviction; thus, we may not focus only on the least possible basis for an unlawful entry conviction. Furthermore, we do not perceive the usual unlawful entry as being so much less dishonest (as defined by Congress for the District) than housebreaking that it *should* be deemed excluded from § 14–305(b)(1)(B).

On the other hand, we would note, illustratively, that if one were lawfully on premises exercising First Amendment rights, then refused to leave upon lawful demand to do so, and was thereupon convicted of unlawful entry under D.C.Code 1973, § 22–3102, he or she would have an opportunity to rehabilitate credibility by making a "limited explanation" of the circumstances supporting the conviction if the government sought to use it for impeachment. *Middleton v. United States,* D.C.App., 401 A.2d 109, 125 (1979); *see Jenkins v. United States,* D.C.App., 374 A.2d 581, 585 n. 8, *cert. denied,* 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977); *United States v. Boyer,* 80 U.S.App. D.C. 202, 150 F.2d 595 (1945).

5. As the legislative history of D.C.Code 1973, § 14–305 quoted in the text above indicates, that statute calls for a broader interpretation of "dishonesty or false statement" than the identi-

cally worded Fed.R.Evid. 609(a)(2), where Congress intended to permit impeachment only *with "crimes such as perjury or subornation or* perjury, false statement, criminal fraud, embezzlement, or false pretenses, or any other offense in the nature of *crimen falsi* the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." H.R.Conf.Rep. No. 1597, 93d Cong., 2d Sess. 9, *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 7098, 7103; *see United States v. Dorsey,* 192 U.S.App.D.C. 313, 325–327, 591 F.2d 922, 934–36 (1978) (shoplifting not impeachable offense under Fed.R.Evid. 609(a)(2)); *United States v. Ashley,* 569 F.2d 975, 978–79 (5th Cir.), *cert. denied,* 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978) (same); *United States v. Seamster,* 568 F.2d 188, 190–91 (10th Cir. 1978) (burglary not an impeachable offense under Fed.R.Evid. 609(a)(2)); *United States v. Ortega,* 561 F.2d 803, 805–06 (9th Cir. 1977) (shoplifting not impeachable offense under Fed.R.Evid. 609(a)(2)); *United States v. Hayes,* 553 F.2d 824, 827 (2d Cir.), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977) (neither armed robbery, burglary, nor petit larceny an impeachable offense under Fed.R.Evid. 609(a)(2) (dictum)); *United States v. Smith,* 179 U.S.App.D.C. 162, 176, 551 F.2d 348, 362 (1976) (attempted robbery not an impeachable offense under Fed.R.Evid. 609(a)(2)); *United States v. Millings,* 175 U.S.App.D.C. 293, 295–96, 535 F.2d 121, 123–24 (1976) (neither unlawful possession of narcotics nor carrying a pistol without a license an impeachable offense under Fed.R.Evid. 609(a)(2)).

mitted to state his personal opinion of the credibility of a witness or of a defendant. *Jenkins v. United States*, D.C.App., 374 A.2d 581, 584, *cert. denied*, 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977); *Harris v. United States*, 131 U.S.App.D.C. 105, 402 F.2d 656 (1968). Similarly, it is impermissible for the prosecutor directly to suggest to the jury that defense counsel does not believe his own client, for that would inject an irrelevant issue into the case; it risks directing the jury away from the evidence.

■ However, even if we assume, for the sake of argument, that the prosecutor committed error, it was harmless here. Although appellant's credibility was central to the case, the unshaken identification evidence against appellant was overwhelming (particularly in contrast with appellant's weak alibi witness). Moreover, the prosecutor's remark was an isolated statement in an otherwise proper summation of the evidence. *Compare Villacres v. United States*, D.C.App., 357 A.2d 423 (1976) (prosecutor's closing argument was a deliberate, sustained attempt to prejudice defendant by referring to matters not in evidence and to the prosecutor's personal opinion). Finally, in the general instructions, the court told the jury that it was the sole judge of the facts and that the arguments of counsel were not evidence.

Under the circumstances, we cannot say that the judgment was substantially swayed by the prosecutor's offending remark. *See Reed v. United States*, D.C. App., 403 A.2d 725 at 731 (1979); *Bennett v. United States*, D.C.App., 375 A.2d 499, 504 (1977); *Villacres, supra* at 428.

*Affirmed.*