James E. POWELL, Appellant,

v.

UNITED STATES, Appellee.

Tilman FIELDS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 81–43, 81–282.

District of Columbia Court of Appeals.

Argued Sept. 8, 1982.

Decided Nov. 24, 1982.

As Amended Jan. 24, 1983.

Rehearing En Banc Denied
March 29, 1983.

Frank A.S. Campbell, Washington, D.C., appointed by this court, for appellant Powell.

Barbara R. Miller, Public Defender Service, Washington, D.C., with whom William J. Mertens, Public Defender Service, Washington, D.C., was on the brief for appellant Fields. Silas J. Wasserstrom, Public Defender Service, Washington, D.C., also entered an appearance, for appellant Fields.

Lisa J. Stark, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, John R. Fisher, and William J. Bowman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, MACK, Associate Judge, and YEAGLEY, Associate Judge, Retired.

MACK, Associate Judge:

Following a jury trial, appellant Powell was convicted of carrying a pistol without a license (D.C.Code 1973, § 22–3204) and both appellants, Fields and Powell, were convicted of armed robbery (D.C.Code 1973, §§ 22–2901 and –3202). On appeal, appel-

lants assert that comments made by the prosecutor during closing and rebuttal arguments constituted such prejudicial misconduct as to require a new trial. We find the prosecutor's comments to be improper. Since we cannot say that the misconduct did not substantially sway the judgment of the jury in its deliberations in the Fields case, we reverse as to appellant Fields. We find the effect of the misconduct significantly less prejudicial, and therefore affirm, as to appellant Powell.

The government's key witness was the complainant Ivanhoe Johnson. He testified that at about 6:45 p.m. on November 6, 1979, he was driving home in his cab when two men approached him and asked if he would take them to 16th Street & Massachusetts Avenue, N.E. Johnson initially refused but then agreed because the destination was on his way home. One man got in the back of the cab; the other in the front. When Johnson reached the requested location, the man in the front seat grabbed him under the chin and told him to pull into a nearby alley. As Johnson obeyed, the man behind him placed a gun against his head. Johnson was then instructed to turn off the lights of his cab, drive half way down the alley and turn off the engine. He did so. The men went through his clothes, taking his wallet and change purse. Displeased with finding only approximately $15, the man in the front seat hit Johnson across the face, breaking his glasses and cutting the bridge of his nose.

Officer Stephens and Cunningham testified that on November 6, 1979, they were working in the vicinity of 16th & Massachusetts Avenue as a part of a narcotics observation team. At about 7 p.m., their unmarked police car was parked in an alley, when a cab pulled into the alley and stopped approximately fifteen yards from their vehicle. The cab was apparently overheated, with steam coming out from under the hood. When they heard yelling, they approached the cab and Officer Stephens inquired as to what was going on. Appellant Fields said it was his cab and they were just drinking. Officer Stephens noticed that Mr. Johnson's nose was bleeding and appellants were ordered out of the cab. Stephens then observed a gun on the front seat of the cab and appellants were placed under arrest. At this point, Johnson said that he had been robbed. A search of appellant Powell at the scene and at the police station produced $14 and two rounds of .22 caliber ammunition; Johnson's wallet was found on the front seat of the cab and his change purse was found under the back seat.

Johnson and both officers testified that they did not notice the smell of alcohol on the breaths of appellants and appellants neither slurred their words when speaking nor appeared intoxicated. Johnson was unable to identify his assailants but Officer Stephens and Cunningham identified Fields and Powell as the men in the front and back seat of the cab.

Appellant Fields did not deny being in Johnson's taxicab. He stated he had been an alcoholic since 1975 and was drunk at the time of his arrest. Fields testified that he generally went on a drinking binge after getting his welfare check at the beginning of each month and was on such a binge on November 6, 1979. That morning, he went to the liquor store, bought a six-pack of beer, returned home and drank the beer. He then went to the home of Powell's mother to find Powell but his friend was not there. He returned to the liquor store, bought a six-pack of beer and one-half gallon of Wild Irish Rose wine. He drank all but one beer. In early afternoon, he met Powell on the street and they purchased a fifth of Wild Irish Rose and some beer which they shared. Having run out of cash, they went to Fields' sister's house and his sister reluctantly gave Fields $20. Appellants returned to the liquor store, purchased one-half gallon of wine and one-half pint of vodka and stood in the alley near the liquor store, drinking.

Fields admitted being in Mr. Johnson's cab. He testified that Powell was taking Johnson to Powell's mother's house for

some water for the overheated cab. Fields said he would ride with them, but the cab stopped in the alley, apparently overheated. Fields denied robbing or striking Johnson although he did not recall precisely what happened because he was intoxicated.

Fields' testimony was corroborated in part by his sister, Nancy Brunson. She confirmed that Fields usually got drunk when he received his payments at the beginning of the month and stayed drunk until the money ran out. She recalled that despite misgivings she gave Fields $20 on November 6, 1979 and that he was extremely intoxicated at the time. Appellant Powell did not take the stand and presented no additional evidence.

■ At the close of the evidence all parties addressed the jury in closing arguments. It is at this point in the trial, appellants contend, that reversible error occurred. It is argued that comments made by the prosecutor during closing and rebuttal arguments constituted misconduct and substantially prejudiced the jury. We agree that the arguments constituted misconduct. Because of the numerous instances of misconduct, and because the case against Fields rested entirely on the credibility of witnesses we cannot say that the improprieties did not substantially prejudice the jury, and reverse as to Fields.[1] Since Powell failed to present any meaningful defense coupled with the fact that only a single comment was directed against him, we find that the misconduct did not substantially prejudice the jury and, therefore, does not constitute grounds for reversal.

There is no question that the government may prosecute vigorously and zealously. The prosecutor, however, plays a special role in our judicial system and carries unique responsibilities. *See Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Moreover, the prosecutor, as is every attorney, is expected to know and abide by the rules of the court and of his profession.

Appellants allege numerous prosecutorial violations which constitute grounds for reversal. First, the prosecutor expressed his personal opinion as to the credibility of Fields when he stated:

> Mr. Fields has concocted for you a ridiculous story in his attempt to deny his responsibility to you and to this community.

We have repeatedly reproved lawyers for expressing personal opinions during arguments to the jury.[2] *See, e.g., Dyson v. United States,* D.C.App., 418 A.2d 127 (1980); *Bates v. United States,* D.C.App., 403 A.2d 1159 (1979); *Jenkins v. United States,* D.C.App., 374 A.2d 581, *cert. denied,* 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977); *Villacres v. United States,* D.C. App., 357 A.2d 423 (1976); *Hyman v. United States,* D.C.App., 342 A.2d 43 (1975). It is for the jury, not for counsel, to decide whether a witness is telling the truth. An attorney may not divert the jurors from this task by injecting his personal evaluation as to a witness' veracity. This is of cardinal importance when, as here, the credibility of Fields was crucial to the verdict. The testimony of Fields conflicted both with the government's evidence as to the events of the day in question and with the government's contention that Fields was insufficiently intoxicated to negate the specific intent element of the charge. Who the jury believed was dispositive of the issue of innocence or guilt. Fields' testimony is "concocted" only if the jury accepts the

---

1. Fields' motion for a mistrial following rebuttal argument was denied.

2. Canon 7 of the Code of Professional Responsibility, as amended by this court (DR 7–106(C)(4)), provides that "a lawyer shall not ... assert his personal opinion as to the justness of a cause, as to the credibility of a witness, ... or as to the guilt or innocence of an accused." Similarly, the *ABA Standards for Criminal Justice Relating to the Prosecution Function,* 3–5.8(b) provides: "*Argument to the jury.* . . . It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."

government's version of the incident. The prosecutor may not publicly cast his vote.

■ The prosecutor further attacked Fields' credibility during rebuttal argument:

Mr. Johnson has a prior gun charge against him. He pleaded guilty. He got a fine. You heard that. He told you about that himself. He told it to you voluntarily. The first thing . . . . He is not hiding anything.

Did Tilman Fields do the same for you? Did Tilman Fields come out and the first thing that he told you was that he had been convicted twice of escape, once for bail jumping? Did he tell you he was convicted once for possession of a prohibited weapon? Did he come out and tell you that? No. He didn't. It wasn't until the very end that he admitted that is what happened.

This comment clearly insinuated that Fields was not believable because he was trying to hide his criminal record from the jury. A witness has no control over the sequencing of the questions put before him. He answers the questions in the order in which they are presented. Here defense counsel apparently made the tactical decision to refrain from inquiring as to prior convictions during direct examination. Such information was elicited during cross-examination. The fact that Fields did not testify regarding his prior convictions until cross-examination does not give rise to the inference that he was trying to hide something. Such an inference is unreasonable and misleading, and should not have been put forth by the prosecutor.[3]

■ The prosecutor not only expressed his opinion that appellant Fields was lying, but went on to insinuate that Fields' attorney did not believe him. "Are you going to believe a man who has a stake in the outcome? Are you going to believe him? Even his own lawyer doesn't talk too much about that." Such a statement not only expresses an opinion and thereby constitutes a usurpation of the jury's function but has a highly prejudicial impact on a jury.

This court has held it "impermissible for the prosecutor directly to suggest to the jury that defense counsel does not believe his own client." *Bates v. United States, supra* at 1163. In *Bates,* the prosecutor argued, "you must wonder, must you not, why defense counsel never even mentions the testimony of his own client. Why he never even discussed with you what [defendant] himself said." We condemned such a tactic in *Bates;* we condemn it here.

■ In addition to attacking the credibility of Fields, the prosecutor expressed his opinion as to the validity of the intoxication defense.[4]

Here is Mr. Fields. He is caught red-handed in a robbery right on the scene . . . he's got two choices. He can either say, well, there was no robbery; or he can say I was so drunk I don't remember what happened. He can say either of those. Mr. Fields decided to try them both out. He said, first of all, I didn't rob anyone. Then he said, oh, I was drinking so much.

\* \* \* \* \* \*

I don't think I robbed anyone, but I don't remember what happened there. How convenient it all must be not to remember, and say, I don't remember. Therefore, I couldn't have had the intent to rob anyone. . . . Therefore, I am not guilty. I was drinking. It's free. It doesn't count. It doesn't count even if I did rob anyone; that's what he's saying.

**3.** The *ABA Standards for Criminal Justice Relating to the Prosecution Function,* 3–5.8(a) reads: "The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw."

**4.** The *ABA Standards for Criminal Justice Relating to the Prosecution Function,* 3–5.8(d) reads: "The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law . . . ."

It is a mischaracterization to suggest that the intoxication defense says the offense "doesn't count"; the defense challenges the prosecutor's case by negating the specific intent element of the crime. As an advocate, an attorney may argue the facts presented as they relate to the existing law. He may not use the trial as a forum for challenging the wisdom of the law.

The prosecutor in his comment not only misstated the theory upon which the intoxication defense is based but he strongly intimated that Fields had fabricated his testimony. The prosecutor's views on the legitimacy of the intoxication defense are irrelevant; his charges of fabrication are prejudicial.[4a] *Dyson v. United States, supra* at 584.

██ Finally, the prosecutor made comments directed to the emotions and prejudices of the jury when he stated:

> Officer Payne recovers two, 22 caliber live rounds of ammunition. Now, this gun was not loaded. . . . It was cocked but it was not loaded, although Mr. Powell had those rounds in his pocket. Well, ladies and gentlemen, what if Mr. Powell had been able to get a hold of some 25 caliber ammunition? Where would that ammunition have been then? Well, let's thank goodness that Mr. Powell didn't get the right caliber ammunition. Let's thank goodness for Mr. Johnson's sake.
>
> *        *        *        *        *        *
>
> Isn't there something more important going on? Isn't it time that this jury, acting as the conscience of this community, stood up and sent a message loud and clear to James Powell, and sent that same message loud and clear to Tilman Fields, and say, we don't tolerate robberies?

> We don't tolerate armed robberies. Send a message to them. This community does not and cannot tolerate the robbing of its citizens. The robbing of its cab drivers, the robbing of its 59-year-old citizens.
>
> And if you do, based on the facts here, you will send that message to James Powell, guilty of armed robbery, and you will send that message to Tilman Fields, guilty of armed robbery.
>
> And you well send that message to James Powell, guilty of carrying a pistol without a license.

The suggestion that dire harm would have come to Johnson if appellants had the correct caliber bullet is speculative, totally lacking in support by the evidence and irrelevant. The remark was clearly calculated to arouse the sympathy of the jurors for Johnson and play on their personal fears about violence. We have and continue to condemn such emotional appeals. *Reed v. United States,* D.C.App., 403 A.2d 725, 730 (1979); *Fernandez v. United States,* D.C. App., 375 A.2d 484, 486 (1977); *Clarke v. United States,* D.C.App., 256 A.2d 782, 787 (1969). The request that the jurors "send a message" to appellants is likewise irrelevant and inappropriate. The function of the jury is to determine the facts based on evidence presented. The jurors are not empaneled to send messages on behalf of their community. *Viereck v. United States,* 318 U.S. 236, 247–48 n. 3, 63 S.Ct. 561, 566 n. 3, 87 L.Ed. 734 (1943).

We conclude that the challenged comments were improper and exemplify the type of prosecutorial misconduct this court consistently condemns.[5]

---

**4a.** This record does not provide a basis to support a legitimate argument of fabrication. *Cf. Kleinbart v. United States,* 426 A.2d 343, 352 (D.C.1981).

**5.** *See, e.g., Dyson v. United States,* D.C.App., 450 A.2d 432 (No. 80–1189, Aug. 23, 1982); *Dyson v. United States, supra; Bates v. United States, supra; Reed v. United States, supra; Sellars v. United States,* D.C.App., 401 A.2d 974 (1979); *Middleton v. United States,* D.C. App., 401 A.2d 109 (1979); *Williams v. United States,* D.C.App., 379 A.2d 698 (1977); *Fernandez v. United States, supra; Miles v. United States,* D.C.App., 374 A.2d 278 (1977); *Jenkins v. United States, supra; Davis v. United States,* D.C.App., 367 A.2d 1254 (1976), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 114 (1977); *Villacres v. United States, supra; Hyman v. United States, supra; Medina v. United States,* D.C.App., 315 A.2d 169 (1974); *Garris v. United States,* D.C.App., 295 A.2d 510 (1972).

When, as here, prosecutorial misconduct is found, this court will reverse only when the errors rise to the level of "substantial prejudice." *Dyson v. United States, supra* at 132; *Dent v. United States,* D.C.App., 404 A.2d 165, 172 (1979); *Garris v. United States,* D.C.App., 295 A.2d 510, 512 (1972). The test to determine whether substantial prejudice occurred as a result of the misconduct is "whether we can say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error." *Gaither v. United States,* 134 U.S.App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)); *Dyson v. United States, supra* at 132; *Dent v. United States, supra* at 172 n. 8; *Bennett v. United States,* D.C.App., 375 A.2d 499, 504 (1977); *Smith v. United States,* D.C.App., 315 A.2d 163, 166, *cert. denied,* 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974); *Garris v. United States, supra* at 512. We will apply this standard separately to each appellant.

The government's case against Fields included testimony by the victim and two police officers who were on the scene. Fields did not unqualifiedly deny the occurrence of the crime. Through his own testimony and the testimony of his sister, he presented the defense of intoxication which, if believed, would negate the specific intent element of the crime. The jury's assessment of the believability of the witnesses was dispositive in reaching a verdict. Thus the prosecutor's attack on the veracity of the appellant went to the very essence of the appellant's defense.

The prejudicial effect of the prosecutorial misconduct was compounded by the timing of the comments. Many of the improper remarks were made during rebuttal argument. Defense counsel was thereby denied the opportunity to contest or explain the statements in summation before the jury. *See Garris v. United States, supra* at 512; *Gaither v. United States, supra* at 173, 413 F.2d at 1080.

Often, a judge's charge to the jury may mitigate the errors committed during trial. The trial court here did give the appropriate instructions to the jury that they were the sole judges of the facts,[6] that the facts should be determined solely from the evidence,[7] and that statements and arguments of counsel were not evidence.[8] Curative judicial instructions, however, do not always eradicate the harm. *Villacres v. United States, supra* at 428. *See also Miller v. United States,* D.C.App., 444 A.2d 13, 16 (1982). We find the court's instructions insufficient to compensate for the prejudice inflicted.

When viewed in totality, we find the cumulative effect of prosecutorial misconduct substantially interfered with the jury's ability to evaluate the evidence presented by Fields on the issue of his intoxication and constitutes reversible error.[9] Appellant

---

6. "You are the sole and exclusive judges of the facts. You alone determine the weight, the effect, and the value of the evidence, and the credibility of the witnesses."

7. "You should determine the facts without prejudice, without fear, without sympathy or favor, solely from a fair consideration of the evidence."

8. "I want to let you know that the statements and arguments of counsel are not evidence. They are only intended to assist you in understanding the evidence and the contentions of the parties."

9. Fields' second ground for appeal is that the trial court misstated the law on the defense of intoxication when it instructed the jury:

> The mere fact of consumption of alcoholic beverages before the commission of a crime will not by itself relieve the perpetrator from criminal liability.
> That the defendant, Tilman Fields, may have been drunk in the ordinary sense of that word is not sufficient. He must have been so

Fields is entitled to a new trial. Accordingly, his judgment is reversed and the cause remanded.

■ Paralleling the Fields prosecution, the government's case against Powell consisted of testimony by the victim and by the two police officers on the scene at the time of the offense. Unlike Fields, however, Powell did not take the stand and presented no meaningful defense. Although Powell's counsel mentioned the intoxication defense in his opening remarks, insufficient evidence was presented to require the requested intoxication instruction.[10]

Since Powell did not present evidence supporting an intoxication defense and did not take the stand, his credibility was not in issue. The single instance of prosecutorial misconduct directed at him, therefore, was significantly less prejudicial than was the misconduct directed at Fields. Applying the "substantial prejudice" standard, we find no reversible error as to Powell and judgment is affirmed.

*So ordered.*

---

drunk as to be incapable of forming the intent to steal.

That is to say, incapable of consciousness that he is committing a crime or of discriminating between what is right and wrong.

Fields challenges the final paragraph of the quoted instruction.

Since we reverse appellant Fields' conviction due to prejudicial prosecutorial misconduct, we need not address this issue. We do advise that the best policy when charging the jury is to follow the standard instructions from the Criminal Jury Instructions for the District of Columbia.

**10.** Powell alleges error in the trial court's refusal to give the intoxication jury instruction. We find that the court was correct in denying the instruction. The intoxication defense instruction need only be given "'if sufficient evidence on the intoxication issue has been introduced so that a reasonable man could possibly entertain a doubt therefrom that the accused was able to form the necessary intent' .... The evidence must reveal such a degree of complete drunkenness that a person is incapable of forming the necessary intent essential to the commission of the crime charged." *Smith v. United States,* D.C.App., 309 A.2d 58, 59 (1973)

(quoting *Heideman v. United States,* 104 U.S. App.D.C. 128, 131, 259 F.2d 943, 946 (1958), *cert. denied,* 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959)).

In his opening statement, Powell's counsel said he would show that Powell was intoxicated. Yet no defense was presented by Powell. The only evidence remotely relating to Powell's state of intoxication was testimony by Fields that Powell was a heavy drinker, and had been drinking and was intoxicated on the day of the offense. The record is void of any evidence as to his level of intoxication or even as to the amount of alcohol Powell consumed. The court correctly ruled that insufficient evidence was present to warrant the instruction.

Powell also alleges error in the trial court's refusal to give an instruction on the lesser-included general intent crime of assault with a dangerous weapon. A defendant is entitled to a lesser-included offense instruction only if there is a sufficient evidentiary basis for the lesser charge. The court's correct ruling on this issue is based on the identical rationale used when it ruled that insufficient evidence was present to warrant the intoxication instruction.