Keith A. LOGAN, a/k/a Kevin
Logan, Appellant,

v.

UNITED STATES, Appellee.

Kevin ATTAWAY, Appellant,

v.

UNITED STATES, Appellee.

Roy COBB, Appellant,

v.

UNITED STATES, Appellee.

Nos. 83–1085, 83–1322 and 83–1397.

District of Columbia Court of Appeals.
Argued Nov. 29, 1984.
Decided March 27, 1985.

Richard A. Hannibal, Washington, D.C., appointed by the court, for appellant Logan.

Allie Sheffield, Public Defender Service, Washington, D.C., with whom James Klein and Mark S. Carlin, Public Defender Service, Washington, D.C., were on brief, for appellant Attaway.

Theodore O. Dixkoskoff, Pittsburgh, Pa., for appellant Cobb.

Edward C. McGuire, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas P. Murphy, and Mary Ellen Abrecht, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before FERREN and ROGERS, Associate Judges, and GALLAGHER, Associate Judge, Retired.

FERREN, Associate Judge:

■ A jury convicted each appellant of two counts of carrying a pistol without a license, D.C.Code § 22–3204 (1981), possession of an unregistered firearm, D.C.Code § 6–2311 (1981), and unlawful possession of ammunition, D.C.Code § 6–2361 (1981).[1] On appeal, there are two principal issues: (1) alleged instances of prosecutorial misconduct and (2) sufficiency of the evidence as to all convictions.[2] We affirm all convictions.

## I.

On January 27, 1983, Police Officer Malcolm Hall spotted appellants in a 1970 two-door Buick, headed in a westerly direction on I Street, N.W., at approximately 3:30 a.m. Appellant Cobb was driving; appellant Attaway was seated in the front passenger's seat; and appellant Logan sat directly behind him in the back seat. Hall had followed appellants for a short distance when Cobb precipitously made an illegal right-hand turn from the middle lane onto a ramp leading to the Southwest Freeway. Appellants' vehicle then accelerated rapidly, exceeding the posted speed limit. Officer Hall activated his emergency lights and siren and began a high speed chase. Other police cruisers soon joined the pursuit. Shortly before appellants were apprehended, Officers Glean and Coursey positioned their car directly behind the fleeing vehicle.

Appellants' car eventually pulled over toward the right curb and slowed down. The officers saw the passenger door open. Both Glean and Coursey noted that the

---

1. The trial court sentenced appellants Attaway and Cobb under the Federal Youth Corrections Act, 18 U.S.C. § 5010 (1982). The court sentenced appellant Logan to one year's incarceration on each count, the sentences to run concurrently.

2. Appellant Cobb also contends that the trial court erred in denying his motion to suppress the physical evidence seized at the time of arrest. Cobb maintains that his arrest, which occurred before the search of the car, was not based on probable cause; thus, the resulting

search and seizure were constitutionally invalid. This argument lacks merit. Officer Hall's testimony clearly establishes that at the time appellants were seized, the officers had probable cause to believe that appellants had committed traffic violations. The subsequent search of the vehicle for weapons was accordingly justified. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *Punch v. United States,* 377 A.2d 1353 (D.C.1977), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978).

door appeared to be held steady, and Glean observed a hand emerge from the rear, lower portion of the open doorway and drop an object (which Glean could not identify) onto the street. Appellants' vehicle then rolled to a stop at a point approximately four car lengths beyond where the object had been tossed. Appellants stepped out of the car, and Officer Coursey, looking under the front passenger seat, saw a gun there. Officer Coursey then walked back to the spot where Officer Glean had seen the object dropped from the car and saw another gun lying in the roadway. Appellants were arrested and charged with weapons offenses.

## II.

Appellants initially allege several instances of prosecutorial misconduct. First, the prosecutor remarked during closing argument that appellants "are not the first ones to walk into a court of law and try to hide behind that standard of burden beyond a reasonable doubt." Defense counsel failed to object to this comment, but the court admonished the prosecutor in front of the jury by remarking, "I don't like that characterization." At the close of trial, the court properly instructed the jury that the government must prove appellants' guilt beyond a reasonable doubt and that this burden never shifts.[3] The court further instructed the jury that counsel's remarks are not evidence.

The government concedes the impropriety of the prosecutor's remark but argues that it did not result in reversible error because it could not have substantially affected the outcome of the trial.

When presented with assertions of prosecutorial misconduct, we must evaluate whether the conduct created "substantial prejudice" to the appellant. *Arnold v. United States,* 467 A.2d 136, 137 (D.C. 1983) (citations omitted); *(Phillip) Dyson v. United States,* 418 A.2d 127, 132 (D.C. 1980). When appellant fails to object at trial, however, we must determine "whether the prosecutor's comments amounted to 'plain error;' that is, whether they were so clearly prejudicial to substantial rights of appellant as to jeopardize the very fairness and integrity of the trial." *Arnold,* 467 A.2d at 137–38 (citing *Watts v. United States,* 362 A.2d 706 (D.C.1976) (en banc)).

Although the prosecutor's remark unquestionably was improper, we agree with the government that it was not so clearly prejudicial as to constitute plain error. The trial court's immediate reproach of the prosecutor, as well as the court's instructions to the jury—which immediately followed closing arguments—mitigated the adverse impact of the prosecutor's comment. Moreover, the government's case was sufficiently strong that the error was unlikely to have altered the outcome of the trial.

Appellants next allege that, after the trial court denied a requested "flight" instruction,[4] the prosecutor improperly ar-

---

**3.** The court instructed the jury as follows:

Every defendant in a criminal case is presumed to be innocent. That presumption of innocence remains with defendant ... unless and until proven guilty beyond a reasonable doubt.

The burden is on the Government to prove the defendant's guilt beyond a reasonable doubt, and that burden never shifts.... The law does not require a defendant to prove his innocence....

**4.** Criminal Jury Instructions for the District of Columbia, No. 2.44 (3d ed. 1978):

FLIGHT OR CONCEALMENT BY DEFENDANT

Flight or concealment by a person after a crime has been committed or after he has been accused of a crime may be motivated by a variety of factors which are fully consistent with innocence. It does not create a presumption of guilt, nor does the person's flight or concealment necessarily reflect feelings of guilt. Furthermore, since innocent persons sometimes have feelings of guilt, such feelings do not necessarily reflect actual guilt. While you may consider flight or concealment as one circumstance tending to show feelings of guilt, and you may also consider feelings of

gued to the jury that appellants' flight from the police could be considered evidence of guilt.

The prosecutor initially requested a flight instruction during discussion of preliminary matters before trial. The court at that time declined to rule on the request but expressed strong concern that such an instruction might unduly prejudice appellants Attaway and Logan; as passengers in the vehicle, they were not necessarily responsible for Cobb's flight or for the consciousness of guilt thus implied. The court ultimately denied the requested instruction. Subsequently, however, during closing argument, the prosecutor stated:

> Well, ladies and gentlemen, we submit there is evidence before you in which you can infer Mr. Attaway knew that gun was there.
>
> And what is that ... evidence? The fact that they fled from the police. Did you ever hear the saying, actions speak louder than words?

Defense counsel objected and later moved for a mistrial. The court, however, denied the motion, remarking that the prosecutor "didn't suggest that the jury draw inferences as to instructions."

■ An instruction that the jury may infer guilt from the fact of flight "should be used sparsely," *Austin v. United States*, 134 U.S.App.D.C. 259, 261, 414 F.2d 1155, 1157 (1969), and is improper "unless the evidence reasonably supports the inference that there *was* flight...." *Scott v. United States*, 412 A.2d 364, 371 (D.C. 1980) (emphasis added). Moreover, even when there is a sufficient foundation for giving the instruction, the court must fully apprise the jury that flight may be prompted by a variety of motives "and thus of the

caution which a jury should use before making the inference of guilt from the fact of flight." *Austin*, 134 U.S.App.D.C. at 261, 414 F.2d at 1157. Accordingly, because of the danger of prejudice inherent in permitting the jury to make such an inference, there must be some "meaningful evidence" of actual flight before the instruction can be given. *United States v. Vereen*, 139 U.S.App.D.C. 34, 36, 429 F.2d 713, 715 (1970).·

■ The prosecutor clearly invited such an inference here. The government, however, presented no evidence to show that passengers Attaway and Logan "fled" the police at all. They were not in control of the vehicle and may or may not have acquiesced in Cobb's decision to flee. The court, moreover, gave no cautionary instruction to the jury. As to Attaway and Logan, therefore, the prosecutor's remark was clearly improper.

■ The impropriety, nonetheless, was not sufficiently prejudicial to warrant a new trial. When defense counsel objects to a prosecutor's comment to the jury, the test for reversible error is "whether we can say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *Powell v. United States*, 455 A.2d 405, 411 (D.C.1982) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946) (other citations omitted)). Given the strength of the government's evidence (which we evaluate below in connection with appellants' sufficiency claims), we conclude that the prosecutor's "flight" remark did not substantially prejudice Attaway and Logan.[5]

---

guilt as evidence tending to show actual guilt, you are not required to do so. Under no circumstances may you presume a defendant's guilt from his flight or concealment.

You should consider and weigh evidence of flight or concealment by the defendant in connection with all the other evidence in the case and give it such weight as in your judgment it is fairly entitled to receive.

**5.** Appellant Logan also urges that the cumulative effect of improper prosecutorial remarks

caused sufficient prejudice such that the "very fairness and integrity of the trial" were jeopardized. *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc). In view of our conclusion that only two clear instances of misconduct occurred, both of which were harmless, we decline to so rule. This case is distinguishable from *Dent v. United States*, 404 A.2d 165 (D.C. 1979), cited by appellant, in which this court reversed a conviction after noticing many instances of prosecutorial misconduct that were

■ Appellant Logan, the only appellant who did not testify, also asserts that the prosecutor improperly commented on his failure to take the stand. During closing argument, the prosecutor remarked:

> What do all these actions tell you about a man's intent, what he was thinking. We don't know what [appellants] were thinking; they haven't told us on the stand, but you can tell from looking at the totality of the circumstances, whether or not they knew that gun was there.

Logan's counsel did not object at trial. It is clear, however, that the prosecutor was referring to the testimony given by appellants Cobb and Attaway, not to Logan's failure to testify. Viewed in context, therefore, the remark was not "of such character that the jury would naturally and necessarily take it to be comment on the failure to testify." *Byrd v. United States*, 364 A.2d 1215, 1218 (D.C.1976) (citation omitted). In instructing the jury, moreover, the court explained the right to remain silent. Logan's claim of error here must fail.

Appellant Attaway alleges two additional instances of prosecutorial misconduct, although at trial his counsel did not object in either instance. First, Attaway asserts that the prosecutor argued in rebuttal that there were unaccountably missing defense witnesses, despite the court's earlier denial of a missing witness instruction. Attaway had testified that he and Logan, looking for rides home from a local disco, had run into Cobb and by chance asked him for a lift. Attaway added that he had spent most of the evening at the disco talking with his girlfriend, who was not called at trial. During rebuttal, the prosecutor stated:

> The only reason we know about what happened at [the disco], the only people who told us what went on ... [were] ... Mr. Cobb and Mr. Cobb's brother and Mr. Attaway. Those are the only people that told us they even went to the [disco].

■ Generally, counsel may not invite the jury to draw an adverse inference from a party's failure to produce a witness without first seeking permission from the court. *Parks v. United States*, 451 A.2d 591, 614 (D.C.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983); *see Simmons v. United States*, 444 A.2d 962, 963–64 (D.C.1982); *Dent v. United States*, 404 A.2d 165, 169–71 (D.C.1979). However, no misconduct occurs when, as here, the prosecutor comments on a witness' absence but does not " 'directly urge the jury to draw from the fact [of absence] an inference adverse to appellant.' " *Parks*, 451 A.2d at 614 (citation omitted).

Attaway next claims that the prosecutor impermissibly argued appellants' guilt as an expression of his personal opinion. Attaway points to the prosecutor's characterization of the defense as a "story" and to his assertion that "clearly the evidence supports" appellants' guilt. Attaway also notes that during rebuttal the prosecutor remarked, "I'm going to ask you to weigh the evidence, and don't let those defendants con you. Don't let them trick you." Counsel did not object to any of these remarks.

■ We have often stated that attorneys may not express personal opinions during arguments to the jury. *Powell v. United States*, 455 A.2d at 408; *Dyson v. United States*, 418 A.2d at 130. The danger of impropriety is particularly acute when the government's case rests entirely on the credibility of witnesses or on circumstantial evidence. *Powell*, 455 A.2d at 408; *Dyson*, 418 A.2d at 129, 130. Here, however, the government's case was strong on the critical element of criminal intent and did not depend solely on the credibility of the witnesses' testimony. Moreover, the prosecutor permissibly may argue the weight of the evidence to the jury. *See Arnold v. United States*, 467 A.2d at 138 & n. 2; *Tuckson v. United States*, 364 A.2d

"repeatedly objected to" by defense counsel. *Id.* at 172. Similarly, *Powell v. United States*, 455 A.2d 405 (D.C.1982), also cited by appellant,

involved "numerous instances of misconduct" coupled with a relatively weak government case. *Id.* at 408.

138, 142 (D.C.1976). A comment will be within the acceptable range as long as it is not an "outright expressio[n] of personal opinion." *See Arnold,* 467 A.2d at 138 & n. 2. We are not persuaded that these remarks were so clearly prejudicial as to amount to plain error.

### III.

Appellants next claim that the trial court erred in denying their motions for judgment of acquittal on the ground that the evidence was insufficient to support convictions for carrying a pistol without a license (CPWOL) and for possession of an unregistered firearm. Appellants were charged with a single count of each weapons offense, but each count, in effect, charged appellants with unlawfully carrying or possessing both pistols. The government accordingly introduced evidence of constructive possession of both guns in support of each charge, and the trial court gave the jury a special verdict form to determine whether, as to each charge—CPWOL and unregistered firearm—each appellant unlawfully carried or possessed one or the other gun, or both.[6]

The jury found each appellant guilty on both counts as to both guns. Because we conclude that the evidence was sufficient to support appellants' convictions on both counts as to the gun tossed out of the car, we do not address whether the evidence supports appellants' convictions for constructive possession of the gun recovered from under the passenger seat.

The applicable standard of review is set forth in *Curley v. United States,* 81 U.S. App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied,* 331 U.S. 837 (1947):

[A] trial judge, in passing on a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt

beyond a reasonable doubt. (Footnote omitted.)

*Accord Kenhan v. United States,* 263 A.2d 253, 254 (D.C.1970) (challenge to sufficiency of evidence).

Appellants were charged with weapons offenses based on a theory of constructive possession, which the government must establish by proving " 'knowledge of the presence of the pistol or ammunition *and* the existence of dominion and control over them.' " *Easley v. United States,* 482 A.2d 779, 781 (D.C.1984) (citations omitted) (emphasis in original); *accord Johnson v. United States,* 309 A.2d 497, 499 (D.C.1973), *cert. denied,* 416 U.S. 951, 94 S.Ct. 1960, 40 L.Ed.2d 301 (1974). Constructive possession may be established by either direct or circumstantial evidence. *United States v. Hubbard,* 429 A.2d 1334, 1338 (D.C.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981). Evidence of proximity is sufficient to permit the jury to infer that appellants had convenient access and thus "dominion and control" over the guns. *See Johnson,* 309 A.2d at 499; *Waterstaat v. United States,* 252 A.2d 507, 509 (D.C.1969). Knowledge of the gun's presence may be inferred from surrounding circumstances; the government need not offer direct evidence of appellants' knowledge. *Powell v. United States,* 246 A.2d 641, 642 (D.C.1968); *accord Johnson,* 309 A.2d at 499; *Kenhan v. United States,* 263 A.2d at 254.

We conclude that the evidence was sufficient to support the inference of constructive possession of the gun recovered from the street. Officers Glean and Coursey testified that they had seen the vehicle pull over slightly and slow down. The passenger door opened and held steady. Officer Glean saw an "object" thrown from the car. This occurred very shortly before appellants' vehicle stopped and the gun was found a mere three or four car lengths behind. The geographic and temporal

---

6. Because each count contained a charge with respect to two guns, this verdict form was necessary to assure a conviction only if there was a unanimous verdict as to a particular gun.

proximity of the events provide strong evidence from which the jury might reasonably infer that the object thrown out of the car was, in fact, the gun later recovered from the roadbed. Moreover, the circumstances, as related by Officers Glean and Coursey, suggest that appellants acted in concert. The jury could reasonably find that Cobb, the driver, pulled the car over and slowed down to permit Attaway to open—and hold open—the passenger door (of a two-door vehicle) from the front seat while Logan, in the back seat, tossed out the gun from the rear, lower portion of the door. We conclude that both knowledge and control may be inferred from the government's evidence.

**IV.**

Finally, appellants urge us to reverse their convictions for unlawful possession of ammunition, again claiming that the evidence was insufficient to support guilty verdicts. Appellant Logan argues, more specifically, that the government failed to establish that the ammunition recovered was, in fact, live ammunition. He further maintains, joined by Attaway, that the government failed to prove that appellants lacked a valid registration certificate for any gun of the same gauge or caliber as the ammunition, as required by D.C.Code § 6–2361 (1981).

Appellants' first argument lacks merit. The ammunition was recovered from the pistol thrown out of appellants'

car. Reasonable jurors could infer that the ammunition was live.

Appellants' second contention is equally unpersuasive. Section 6–2361 provides:

No person shall possess ammunition in the District of Columbia unless:

(1) He is a licensed dealer pursuant to subchapter IV;

(2) He is an officer, agent, or employee of the District of Columbia or the United States of America, on duty and acting within the scope of his duties when possessing such ammunition;

(3) He is the holder of the valid registration certificate for a firearm of the same gauge or caliber as the ammunition he possesses; [7] or

(4) He holds an ammunition collector's certificate on September 24, 1976.

At trial, the government introduced certificates attesting that neither of the guns recovered was registered to any of the appellants. *See id.* § 6–2361(3). Appellants maintain that the government must prove that none of the appellants had registered any gun of the same caliber, not merely that the two pistols seized were unregistered. This argument assumes that the government must allege and prove the absence of such registration as an essential element of the offense. We reject this contention.[8]

The structure of § 6–2361 ("No person shall possess ammunition in the District of Columbia unless ....") makes clear that

---

**7.** On August 2, 1983, the Council of the District of Columbia amended § 6–2361(3) to read:

(3) He is the holder of the valid registration certificate for a firearm of the same guage or caliber as the ammunition he possesses; except, that no such person shall possess restricted pistol bullets;

**8.** We note that in *Reid v. United States,* 466 A.2d 433 (D.C.1983), we affirmed convictions for unlawful possession of a pistol, D.C.Code § 22–3203 (1981), failure to register a firearm, *id.,* and unlawful possession of ammunition, D.C. Code § 6–2361 (1981). Although the opinion addressed primarily whether the evidence was sufficient to support appellant's convictions for unlawful possession of the pistol and failure to register, we observed that the evidence adduced to support appellant's conviction for unlawful possession of ammunition consisted of a certificate stating that *the* gun seized from appellant was not registered in the District of Columbia. *Reid,* 466 A.2d at 434. This court concluded that "[t]here being sufficient evidence of possession of the gun, it follows that the convictions of failing to register the weapon *and of possession of ammunition* must also be sustained." *Id.* at 435 (emphasis added). Despite the clear factual similarity between *Reid* and the instant case, an examination of the record on appeal in *Reid* reveals that Reid did not raise the claim made by appellants here. We thus may not simply rely on our conclusion in *Reid.*

possession of ammunition is presumptively unlawful. The statute begins with a general prohibition against possession of ammunition and then specifies four, clearly defined circumstances under which such possession is nonetheless permitted. These four circumstances—characterized by the Council of the District of Columbia as "the precise universe of lawful possessors of firearm ammunition" [9]—are therefore most appropriately construed as "exceptions" to the general prohibition; as the statute is drafted, the failure to meet one of the conditions defining a lawful possessor is not a descriptive part of the offense. *Compare Brown v. United States*, 66 A.2d 491, 493 (D.C.1949) (crime of carrying a pistol without a license, D.C.Code § 22–3204, requires government to prove absence of license since "qualifying phrase 'without a license' is not to be treated as an exception to the statute but rather as a descriptive part of the offense") *with White v. United States*, 283 A.2d 21, 23 (D.C.1971) (defendant had burden of demonstrating he came within "dwelling house" exception to crime of carrying a pistol without a license, D.C. Code § 22–3204), *and Williams v. United States*, 237 A.2d 539, 541 (D.C.1968) (defendant had burden of demonstrating he came within "law enforcement officers" exception, D.C.Code § 22–3205, to crime of carrying a pistol without a license, *id.* § 22–3204).

It follows that appellant may only rely on § 6–2361(3) as an affirmative defense; and when "a defendant interposes an affirmative defense such as an exception in a statute, it is the burden of the defendant to bring himself within the exception rather than that of the prosecutor to negative it." *Middleton v. United States*, 305 A.2d 259, 261 (D.C.1973); *accord Brown*, 66 A.2d at 493.[10]

In summary, the government is required to prove only that appellants possessed ammunition, as defined by D.C.Code § 6–2302(2), in order to establish the essential element of the offense. Because the government did so here, the evidence was sufficient for conviction unless the accused produced a registration certificate for a pistol of the same caliber as the proper way of bringing himself within the exception. Appellants have failed to produce such certificates. Accordingly, we affirm their convictions under § 6–2361.

*Affirmed.*

---

**9.** *See* COUNCIL COMM. ON THE JUDICIARY AND CRIMINAL LAW, REPORT TO THE COUNCIL OF THE DISTRICT OF COLUMBIA of 1976 at 15 (1976) (accompanying Bill No. 1–164) ("section [6–2361] ... sets out in detail the precise universe of lawful possessors of firearms ammunition; namely, licensees, authorized government personnel, certified collectors, and registrants of firearms of the same caliber as the ammunition possessed").

**10.** Although the "law enforcement officers" and armed services personnel exceptions to the crime of carrying a pistol without a license are set forth in a separate statutory provision, *see* D.C.Code §§ 22–3204, –3205 (1981), and the "dwelling house" and "place of business" exceptions in § 22–3204, follow the word "except," it is apparent from the language of § 6–2361, barring unlawful possession of ammunition, that the circumstances following the word "unless" are exceptions to a general prohibition against possessing ammunition, not descriptive parts of the offense. Were the government required to negate every possible basis for an accused's lawful possession of ammunition, the prosecutor presumably would have to supply affirmative proof that *none* of the four conditions was met, not just proof of the failure to hold a registration certificate. This would place a difficult if not impossible burden on the government when subsections (2) and (4) are considered. An accused is in a better position to demonstrate the applicability of those exceptions and is in just as good a position as the government to show compliance with subsections (1) and (3). *See Brown*, 66 A.2d at 494.