689 A.2d 568 (1997)
David R. WASHINGTON, Appellant,
v.
UNITED STATES, Appellee.
Nos. 92-CF-493, 95-CO-18.
District of Columbia Court of Appeals.
Argued September 12, 1996.
Decided February 13, 1997.
*570 Richard T. Brown, with whom Mark Rochon, Washington, DC, was on the brief, for appellant.
Chun T. Wright, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Assistant United States Attorney, were on the brief, for appellee.
Before RUIZ and REID, Associate Judges, and KRAMER, Associate Judge, Superior Court.[*]
KRAMER, Superior Court Associate Judge:
At the conclusion of a jury trial, appellant, David R. Washington, was convicted of assault with intent to kill while armed;[1] possession of a firearm during a crime of violence;[2] carrying a pistol without a license;[3] possession of an unregistered firearm;[4] and unlawful possession of ammunition.[5] His direct appeal of those convictions was stayed to permit him to file with the trial court a motion to vacate the conviction and sentence pursuant to D.C.Code § 23-110 (1996) alleging ineffective assistance of trial counsel. Although the trial judge scheduled the matter for an evidentiary hearing, both sides stipulated that no hearing was necessary on the § 23-110 motion. The trial judge denied the motion by written order. Appellant appealed this denial and his direct appeal and his collateral appeal were consolidated. Appellant seeks reversal of his convictions on the ground that he was denied the effective assistance of trial counsel. We affirm the convictions.

I.
The evidence at trial was that at around 2:00 a.m. on June 15, 1990, Marvin Franklin and his girlfriend, Adrienne Edwards, left Franklin's home and went for a walk in the area of 18th and Q Streets, Southeast, in Washington, D.C. Franklin, who knew the area well, spotted a man and woman unknown to him standing on a corner. Franklin inquired who they were. Taking umbrage at this inquiry, the unknown man said to Franklin: "You want to know who I am? I will show you who I am." A fist fight then ensued between Franklin and the unknown man, while a crowd of people watched. During this fight, the unknown woman walked down the street toward appellant's house.
As they fought, Franklin heard the unknown man say, "Give it to me, I will do it!" Franklin then heard a gunshot and felt a bullet strike him in his left side. Seconds later another shot was fired, and Franklin "looked to see who was pulling the trigger." Franklin testified that he saw appellant, who was known to him as "Stink," about ten feet away with a gun in his hand. The second shot struck Franklin in his stomach, causing him to fall. According to Franklin, appellant then walked to within three or four feet of him and fired a third shot into his stomach. Believing that appellant was trying to kill him, Franklin turned his head to the side and closed his eyes. He then heard footsteps running away.
As soon as the police arrived on the scene, Franklin told them that he had been shot by "Stink," whom he described as "a short fat guy" wearing "gray pants and a light colored top." Franklin told them that "Stink" lived in the "second house on the right" and pointed toward appellant's house. Franklin had known appellant from the neighborhood for about three years. The "second house on the *571 right," identified by the police as 1630 Q Street, Southeast, was appellant's house.
Within minutes, the police located appellant at his house and returned him to the crime scene. There, as appellant talked with a detective on the street, Franklin's girlfriend, Adrienne Edwards, identified him as the man she had seen shoot Franklin. The police later took appellant to the hospital, where Franklin unequivocally identified him as the shooter. Both Franklin and Edwards made in-court identifications of appellant at trial.
Appellant denied shooting Franklin and denied being out on the street at the time of the shooting. Instead, he presented defenses of alibi and misidentification. Appellant testified that throughout the night of the shooting, he had been drinking with friends near his home and had left his friends only briefly to go to the liquor store for more alcohol. Finally, he went home with his girlfriend, Siesa Redmon, and a relative, Kendra Ross. Shortly thereafter, he went to sleep in his basement bedroom, where his brother and sister-in-law were already asleep. Redmon woke him when she heard what sounded like shooting outside. He testified that when he learned the police had come to his home, he put on his clothes and went upstairs to speak with them. Appellant's testimony was corroborated by his sister, Jacqueline Moore, his brother, Bernard Johnson, his nephew, Tony Spencer, and Redmond and Ross.
Appellant argues that his convictions should be overturned because his trial counsel was ineffective. His first basis for this claim is counsel's failure to file a motion to suppress the identification of Franklin's girlfriend, Adrienne Edwards. His second basis is counsel's failure to request a jury instruction on the defense of intoxication.

II.
Claims of ineffective assistance of counsel must be evaluated within the context of the principles set down in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, to prevail on a claim of ineffective assistance of counsel, a defendant must show both that the performance of counsel was deficient and that he was prejudiced by the deficiency. To meet the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064. In that respect, a court must take account of "the variety of circumstances faced by defense counsel" and "the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 689, 104 S.Ct. at 2065. To show prejudice, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. See also Zanders v. United States, 678 A.2d 556, 569 (D.C.1996); McAdoo v. United States, 515 A.2d 412, 419 (D.C.1986). The trial court may address the two Strickland prongs in any order; it need not consider the adequacy of counsel's performance if it finds the defendant has not established prejudice. Strickland, supra, 466 U.S. at 697, 104 S.Ct. at 2069-70; see also Ellerbe v. United States, 545 A.2d 1197, 1198 (D.C.), cert. denied, 488 U.S. 868, 109 S.Ct. 174, 102 L.Ed.2d 144 (1988).
"It is established in this jurisdiction that `[t]he finding of ineffective assistance of counsel is a mixed question of law and fact... and upon review, [the appellate court] will not reverse the trial court's findings of fact if they are supported by evidence in the record.'" Johnson v. United States, 613 A.2d 888, 893 (D.C.1992) (quoting Curry v. United States, 498 A.2d 534, 540 (D.C.1985)). Here, we conclude that the trial court's findings of facts are sufficiently supported by the evidence and agree that appellant has not met his burden on either prong.

III.
There is no professional obligation to file a motion to suppress identification unless such a motion, if filed, would in all likelihood have been granted. Zanders, supra, 678 A.2d at 569; Jones v. United States, 620 A.2d 249, 254 (D.C.1993); Wright v. United States, 608 A.2d 763, 767 n. 11 (D.C. 1992); Taylor v. United States, 603 A.2d 451, *572 459 (D.C.1992). Thus, the failure to file a meritless motion does not constitute ineffective assistance of counsel. Moreover, "[t]he filing of pretrial motions falls within the ambit of trial strategy." Hockman v. United States, 517 A.2d 44, 51 (D.C.1986). Thus, counsel is not ineffective in failing to file a motion if this was a reasonable tactical decision. Id. Further, if a motion to suppress would not have been successful, then an appellant cannot show the prejudice required by Strickland for a finding of ineffective assistance of counsel. Gooch v. United States, 609 A.2d 259, 265 (D.C.1992).
To prevail on a motion to suppress an identification, a defendant must show (1) that the law enforcement procedures used were unduly suggestive, and (2) that there was not a sufficient independent basis to ensure the reliability of the identification nonetheless. See Neil v. Biggers, 409 U.S. 188, 198-99, 93 S.Ct. 375, 381-82, 34 L.Ed.2d 401 (1972); Turner v. United States, 622 A.2d 667, 672 n. 4 (D.C.1993); Henderson v. United States, 527 A.2d 1262, 1267-69 (D.C.1987). In this instance, the trial court found that there was no suggestivity in the police procedures utilized during Adrienne Edwards' identification of appellant at the scene of the shooting. The record confirms the accuracy of that finding.
Edwards initially told the police she did not know who shot Franklin. Within five minutes of the first police inquiry, however, she told them that it was "Stink" who had shot Franklin and pointed him out to the police. Appellant claims that Edwards was coached by the police to identify appellant, because during the first five minutes after their arrival on the scene, the police repeatedly asked Edwards whether she knew the identity of Franklin's assailant and whether she could point out the shooter. Appellant asserts that Edwards' initial failure to identify "Stink" is a "telltale sign" that her later identification was coached. There is no evidence of this in the record.
Contrary to appellant's assertions, repeated questioning by the police during a five minute period about whether a witness knows the identity of an assailant is not by itself unduly suggestive. Nor is asking a witness whether she is able to point out a shooter. This is particularly so when, as here, there was no evidence in the record that the subject was in handcuffs, or that the show-up was staged by the police. Even a staged show-up, of course, is not alone unduly suggestive. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). See also Turner, supra, 622 A.2d at 672. Rather, if conducted soon after a crime, such a show-up enhances the reliability of an identification. Id.; Singletary v. United States, 383 A.2d 1064, 1068 (D.C.1978).
Moreover, based on Edwards' testimony at trial, the court below found that Edwards' initial reluctance was the result of fear, not coaching. Specifically, the trial court found that Edwards' "initial reluctance to identify appellant to the police was due to the psychological trauma of the shooting incident and her subsequent mindset of being afraid of onlookers in the crowd at the scene of the shooting." Thus, there was no evidence of suggestivity which would have provided a basis for suppressing her identification. It follows that there is no basis for concluding that trial counsel was ineffective for failing to file a motion to suppress.[6]
In any event, as the trial court found, there was a substantial independent basis for Edwards' identification. She actually knew appellant from the neighborhood, having seen him several times. She even knew his nickname. Moreover, she was within ten to twelve feet of him at the time Franklin was shot and had a clear and unobstructed view of the shooting which occurred in a well lit street. Her identification took place within fifteen minutes of the shooting. Her initial reluctance to identify him was overcome upon realizing Franklin might well die. Thus, the totality of the circumstances reflects *573 the reliability of her identification. Neil v. Biggers, supra, 409 U.S. at 199, 93 S.Ct. at 382; Henderson v. United States, 527 A.2d 1262, 1268 (D.C.1987). In sum, the trial court did not err in concluding that trial counsel was not ineffective in failing to file a motion to suppress identification since such a motion would not have been granted.[7]

IV.
Appellant also contends that his trial counsel was ineffective because he did not request an intoxication-defense instruction.[8] Counsel is not required, however, to ask for every conceivable instruction, particularly if the request has little or no chance of being granted. Jefferson v. United States, 474 A.2d 147, 151 (D.C.1984).[9] In denying the § 23-110 motion, the trial judge concluded that the evidence at trial did not justify giving such an instruction. We agree. Since the evidence at trial did not support giving this instruction, counsel's failure to ask for it did not represent deficient performance. Nor can appellant show he was prejudiced by this failure.
In the District of Columbia, voluntary intoxication does not excuse criminal actions, although it may negate a defendant's specific intent. See Durant v. United States, 551 A.2d 1318, 1329 (D.C.1988); Carter v. United States, 531 A.2d 956, 964 n. 20 (D.C. 1987); Harris v. United States, 375 A.2d 505, 508 (D.C.1977). Thus, in this case, such an instruction could only serve to reduce the offense of assault with intent to kill while armed to the lesser offense of assault with a dangerous weapon. See Leftwitch v. United States, 460 A.2d 993, 997 n. 3 (D.C.1983) (citing Ingram v. United States, 122 U.S.App. D.C. 334, 337, 353 F.2d 872, 875 (1965)). It would not affect appellant's other convictions, which are general intent rather than specific intent crimes.
As this court wrote in Smith v. United States, 309 A.2d 58, 59 (D.C.1973), "The evidence required to warrant the `intoxication-defense' instruction must reveal such a degree of complete drunkenness that a person is incapable of forming the necessary intent essential to the commission of the crime charged." See also Nicholson v. United States, 368 A.2d 561, 565 (D.C.1977); Williams v. United States, 331 A.2d 341, 343 (D.C.1975); Powell v. United States, 455 A.2d 405, 412 n. 10 (D.C.1983). Thus, there must be evidence that the defendant "has reached a point of incapacitating intoxication."[10]Smith, supra, 309 A.2d at 59. "Drunkenness, while efficient to reduce or remove inhibitions, does not readily negate intent." Heideman v. United States, supra, 104 U.S.App. D.C. at 131, 259 F.2d at 946.
*574 Conclusory statements about the use of alcohol are insufficient to establish the necessary degree of intoxication. Rather, there must be evidence of the type and quantity of alcohol consumed, the length of time during which it was consumed, and the specific manner in which the consumption made the defendant incapable of acting with specific intent. Williams, supra, 331 A.2d at 343; Powell, supra, 455 A.2d at 412 n. 10. In the absence of such specificity, a defendant's testimony that he was intoxicated and under the influence of drugs at the time of the commission of an offense was not sufficient for the instruction to be given. See Williams, supra, 331 A.2d at 343. Likewise, evidence that the defendant was a heavy drinker, that he had been drinking on the day of the offense, and that he was intoxicated at the time of the commission of the offense was not sufficient. See Powell, supra, 455 A.2d at 412 n. 10.
Moreover, the trial court may look to the facts surrounding the offense to decide if the evidence could create a reasonable doubt in the mind of a reasonable juror as to whether a defendant possessed the requisite specific intent. See Heideman, supra, 104 U.S.App. D.C. at 132, 259 F.2d at 947. In a robbery case, for example, the D.C. Circuit found not only that the evidence of incapacitating drunkenness was inadequate standing alone, but also that the defendant's careful advance preparation for the crime showed that he was working "logically, rationally and efficiently to the execution of his criminal purpose." Id. at 131-32, 259 F.2d at 946-47. Similarly, in United States v. Martin, 154 U.S.App. D.C. 359, 475 F.2d 943 (1973), a case like the present one involving the charge of assault with intent to kill while armed, the D.C. Circuit concluded that "the very nature of the acts in question, whereby appellant was able to lunge nearly six feet and deliver a nearly fatal wound to one adversary and then turn and attempt to overcome a second, supports the conclusion that he [was not intoxicated, but] was in full possession of his faculties." 154 U.S.App. D.C. at 366, 475 F.2d at 950.
In this case, there was substantial evidence that appellant had been drinking on the night Franklin was shot. Appellant's sister testified he was with friends drinking Cisco wine and Red Bull beer. Appellant's girlfriend, Siesa Redmon, testified that he had been drinking for a long time  from the evening into the early morning hours. Appellant's nephew, Tony Spencer, testified that both he and appellant were drinking an unknown type of alcohol from small cups. Appellant himself testified that he was drinking beer and perhaps champagne.
Neither appellant nor any of the other defense witnesses, however, was specific about how much alcohol he drank. Over a time span of hours, there may be a substantial difference between the effects resulting from sipping a few drinks and the effects resulting from imbibing one drink after another. Appellant gave only conclusory testimony that he was "real drunk," but the specificity required about the quantity of alcohol consumed was missing. Appellant's testimony that he drank "a whole lot," in the absence of greater specificity, is an inadequate basis for a jury to evaluate whether he had consumed so much alcohol that he was no longer capable of forming a specific intent to kill.
Nor was there testimony concerning how this consumption made appellant incapable of forming the specific intent to kill Franklin. That absence is particularly significant given the other evidence in the case. The jury would have to be satisfied that appellant was Franklin's shooter before reaching the issue of intoxication. Assuming he was the shooter, the evidence showed that he had responded to 18th and Q to aid the unknown man who was in the fight with Franklin; had brought a firearm to the scene with him; had first shot Franklin two times; had then moved closer to Franklin and stood over him to shoot him a third time in his stomach; and had left the scene to avoid detection. Appellant's own testimony was that within an hour of the offense, he had been capable of forming the intent to take a trip to the liquor store for more alcohol, and that within fifteen minutes of the shooting he had been easily awakened to respond to his girlfriend's concerns about hearing shots outside. Thereafter, he had dressed, left his bedroom when summoned to talk to the police, and had accompanied them back to the scene. In their totality, appellant's actions before, during *575 and after the shooting showed that he had in no way "reached [the] point of incapacitating intoxication." Smith, supra, 309 A.2d at 59. Rather, he was fully capable of acting "logically, rationally and efficiently." See Heideman, supra, 104 U.S.App. D.C. at 132, 259 F.2d at 947. The evidence "could not create a reasonable doubt in the mind of any reasonable [juror]" as to whether appellant possessed the capacity to form the specific intent to kill. Id.[11]
In the absence of an adequate factual basis for the intoxication-defense instruction, counsel cannot be found deficient in failing to request it. Nor can appellant make the requisite finding of prejudice.[12]
Accordingly, the convictions of appellant are
Affirmed.
NOTES
[*] Sitting by designation pursuant to D.C.Code § 11-707(a) (1995).
[1] D.C.Code §§ 22-501, -3202 (1996).
[2] D.C.Code § 22-3204(b).
[3] D.C.Code § 22-3204(a).
[4] D.C.Code § 6-2311(a) (1995).
[5] D.C.Code § 6-2361(3).
[6] Furthermore, in an affidavit of trial counsel submitted below by the government, counsel represented that he did not file a motion to suppress Edwards' identification because in his judgment, her initial inability to identify appellant would actually help appellant. The trial court found that this decision fell well within the wide latitude accorded counsel in making tactical judgments. We find no basis for overruling that conclusion.
[7] "This court is bound by the trial court's findings on whether identification procedures were impermissibly suggestive and whether an identification was reliable "if they are supported by the evidence and in accordance with law.'" Turner, supra, 622 A.2d at 672 n. 3 (citing Stewart v. United States, 490 A.2d 619, 623 (D.C.1985) (citation omitted)). See also Garris v. United States, 559 A.2d 323, 327 (D.C.1989).
[8] See CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 5.11 (4th ed.1993).
[9] Upon request of a defendant's counsel, the trial court must instruct the jury on any recognized defense "for which there exists evidence sufficient for a reasonable juror to find in [the defendant's] favor." Bostick v. United States, 605 A.2d 916, 917 (D.C.1992) (quoting Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988)). See also Jackson v. United States, 645 A.2d 1099, 1101 (D.C.1994). This does not mean, however, that to avoid being found ineffective, counsel must request every possible defense instruction. Rather, counsel is entitled to exercise some reasonable tactical judgment and to take into account such factors as the strength of each side's evidence and a defendant's willingness or unwillingness to encourage jury compromise. In reviewing such tactical decisions, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered trial strategy.'" Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted).
[10] It may be that a first degree murder charge does not require the same degree of drunkenness to justify an intoxication-defense instruction given the elements of premeditation and deliberation in addition to the element of specific intent. See Harris v. United States, 375 A.2d 505, 508 (D.C.1977); Heideman v. United States, 104 U.S.App. D.C. 128, 131-32 n. 10, 259 F.2d 943, 946 n. 10 (1958), cert. denied, 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959).
[11] The facts of the instant case are in substantial contrast to those of United States v. Scott, 174 U.S.App. D.C. 96, 529 F.2d 338 (1975) where several witnesses, including appellant, had testified at trial that appellant drank excessively on the morning he attempted to rob a bank; that the "odor" of alcohol on his breath was "repulsive"; that he was a chronic alcoholic who had been treated for that condition at least eighteen times at a clinic; and that although he carried no weapon during the course of the attempted robbery, one hand was thrust toward the teller with "the first finger bent with a knuckle extended" "as though he might have wanted to hold a gun or was holding a gun." Id. at 97, 529 F.2d at 339.
[12] The trial court also found that counsel made a reasonable tactical decision by not requesting the intoxication instruction, since it could detract from the stronger defenses of alibi and misidentification. That finding was not clearly erroneous. See McKinnon v. United States, 644 A.2d 438, 443-44 (D.C.1994); Jefferson, supra, 474 A.2d at 151. This is particularly so since the record below is silent with respect to counsel's reasons for not requesting the instruction. It is appellant who bears the burden of overcoming the presumption of counsel's competence. See Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065. On the record here, that presumption has not been overcome.