Charles W. McGRIFF and Stanley
L. Harris, Appellants,

v.

UNITED. STATES, Appellee.

Nos. 94–CF–1552, 94–CF–1622.

District of Columbia Court of Appeals.

Argued Dec. 17, 1996.
Decided Dec. 18, 1997.

Roy W. Krieger, Washington, DC, appointed by this court, for appellant McGriff.

Sheila Thurmond Mayers, appointed by this court, for appellant Harris.

Whitney C. Ellerman, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Abby J. Stavitsky, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY and FARRELL, Associate Judges.

TERRY, Associate Judge:

Appellants McGriff and Harris were each convicted of carrying a pistol without a license,[1] possession of an unregistered firearm,[2] and unlawful possession of ammunition.[3] On appeal, McGriff contends that the trial court erred in (1) denying him an opportunity to cross-examine a police officer about a threat which the officer had allegedly made against McGriff and his counsel; (2) admitting evidence of traffic violations which led to the arrest of both appellants and were thus relevant to the charged offenses; (3) failing to impose more severe sanctions than it did impose for two alleged violations of the Jencks Act; and (4) failing to declare a mistrial after the prosecutor made two allegedly improper statements during closing argument, even though neither defense counsel ever requested a mistrial. Additionally, both McGriff and Harris contend that the evidence was insufficient to support their convictions. We conclude that the trial court erred in refusing to allow the requested cross-examination, but that the error was harmless beyond a reasonable doubt. We also agree that the prosecutor's remarks were improper, but we hold that the court did not commit plain error in failing to declare a mistrial *sua sponte*. Appellants' other contentions are without merit. Accordingly, we affirm.

1. D.C.Code § 22–3204(a) (1996).

2. D.C.Code § 6–2311(a) (1995).

I

At about 3:30 a.m. on September 5, 1991, Metropolitan Police Officers Michael Fredrick and Norma Horne were on routine patrol in a police car at 20th Street and Gales Place, N.E., when a Chevrolet Blazer drove past them in the opposite direction. Officer Horne noticed that the Blazer did not have a front license plate, so the two officers decided to follow it.

After the Blazer ran a red light at 16th Street and Benning Road, the officers turned on their car's emergency lights and siren. The Blazer, however, did not stop; instead, it speeded up and ran several more red lights. As it began to turn left into an alley, the officers saw a dark object the size of a gun come flying out the right front window of the Blazer. There were no other cars or people in the area when this happened. Officers Fredrick and Horne continued to pursue the Blazer until it was finally stopped a few blocks away by other police officers. Harris, the driver, was placed under arrest for reckless driving. Officer Horne then searched the Blazer and found four live rounds of .44 caliber ammunition under the right front seat. Officer William Hyatt later found a .44 caliber revolver at the place where the dark object had been thrown from the window of the Blazer.

Neither appellant presented any testimony, but both introduced defense exhibits. The trial court denied each appellant's motion for judgment of acquittal.

II

McGriff contends that the trial court violated his Sixth Amendment right of cross-examination when it prohibited any questions about an alleged threat made by Officer Fredrick against McGriff and his trial counsel. Before McGriff's counsel began his cross-examination of Officer Fredrick, the prosecutor moved to preclude him from asking questions about the incident. McGriff's counsel then proffered to the court that one day a few months earlier, as he and McGriff were

3. D.C.Code § 6–2361(3) (1995).

sitting in a courtroom waiting for a hearing to begin, Officer Fredrick "stood up and exited the courtroom, and while passing by us, he bent down and whispered [that] he was going to fuck us up." Counsel maintained that the statement was evidence of bias against McGriff. The prosecutor immediately told the court that Officer Fredrick denied having made any such comment.

The court granted the motion to prohibit the questioning, ruling that any statement such as the one supposedly made by the officer was "totally collateral to the issue of whether or not the defendant allegedly had a gun." The court ruled that the officer's alleged words "could mean a number of different things and, assuming they were even made ... I just don't see it is an issue that somehow sheds light on whether or not these men had a gun or not."

 Bias is always a proper subject of cross-examination. *E.g., Reed v. United States,* 452 A.2d 1173, 1176 (D.C.1982), *cert. denied,* 464 U.S. 839, 104 S.Ct. 132, 78 L.Ed.2d 127 (1983).[4] "The guaranteed opportunity to cross-examine adverse witnesses is an inherent component of the defendant's Sixth Amendment right of confrontation." *Scull v. United States,* 564 A.2d 1161, 1164 (D.C.1989) (citations omitted). "An important function of this constitutionally protected right is the exposure of the witness' biases or motives for not telling the truth." *Elliott v. United States,* 633 A.2d 27, 32 (D.C.1993) (citations omitted). Nevertheless, "a proper foundation must be laid before a cross-examiner may pursue a line of questioning suggesting that a witness is biased." *Ray v. United States,* 620 A.2d 860, 862 (D.C.1993) (citation omitted). "[T]o survive objection, the questioner must proffer 'some facts which support a genuine belief' that the witness is biased in the manner asserted.... In addition, the attorney must proffer facts sufficient to permit the trial judge to evaluate whether the proposed question is probative of bias." *Jones v. United States,* 516 A.2d 513, 517 (D.C.1986) (citations omitted).

 Our case law is "fairly lenient" in describing how the requirement of a factual foundation may be met. *Carter v. United States,* 614 A.2d 913, 919 (D.C.1992). To lay a foundation, "the questioner must support any proposal for cross-examination with a credible statement describing the suspected cause of bias in the witness, supported by plausible factual allegations or itself plausible within the framework of facts that neither party has contested." *Scull, supra,* 564 A.2d at 1164 n. 4. Of course, "a trial court does not abuse its discretion by precluding cross-examination where 'the connection between the facts cited by defense counsel and the proposed line of questioning [is] too speculative to support the questions.'" *Brown v. United States, supra* note 4, 683 A.2d at 125 (citation omitted).

In *Hollingsworth v. United States,* 531 A.2d 973 (D.C.1987), defense counsel sought to recall a defense witness (Ray) to testify about an alleged threat which the complaining witness had made to Ray after the defense had rested. The complaining witness had allegedly seen Ray in the hallway of the courthouse and threatened that she would be "taken care of too." *Id.* at 979. Defense counsel told the court about this incident, but the court denied counsel's request to recall Ray, stating, "That's not a part of this case." This court held that the alleged threat to Ray was "solid evidence of bias which [the defendant] should have been allowed to present to the jury. The jury may have disbelieved that evidence, but it surely was entitled to hear it." *Id.* We concluded that the trial court's error "quite likely resulted in prejudice to the defense" and that the court's refusal to allow such evidence to be introduced "improperly weakened the defense case and requires reversal." *Id.* at 980; *see also Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (conviction reversed because the trial judge "prohibited *all* inquiry into the possibility [of a motive for bias]," a ruling which "violated [the defendant's] rights secured by the Confrontation Clause" (emphasis in original)).

---

**4.** Bias, in this context, "refers both to a witness' 'personal bias for or against a party' and to his or her 'motive to lie.'" *Brown v. United States,*

683 A.2d 118, 124 n. 7 (D.C.1996) (citation omitted).

■ In this case, as in *Hollingsworth*, the jury should have been allowed to hear evidence about Officer Fredrick's alleged threat. Defense counsel proffered "facts sufficient to permit the trial judge to evaluate whether the proposed question [was] probative of bias." *Jones, supra*, 516 A.2d at 517. It was error for the court to rule that any such threat was "totally collateral" to the issues at trial.

■■ The government argues, however, that if the court erred, the error was harmless. Because the restriction on counsel's cross-examination implicates McGriff's constitutional rights, any claim of harmless error must be assessed under the standard set forth in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *see Delaware v. Van Arsdall, supra*, 475 U.S. at 684, 106 S.Ct. at 1438; *Brooks v. United States*, 516 A.2d 913, 916 (D.C.1986). Under *Chapman*, before harmless error may be found, "it must be clear beyond a reasonable doubt '(1) that the defendant would have been convicted without the witness' testimony, or (2) that the restricted line of inquiry would not have weakened the impact of the witness' testimony.'" *Springer v. United States*, 388 A.2d 846, 856 (D.C.1978) (citation omitted). A reviewing court must consider many factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall, supra*, 475 U.S. at 684, 106 S.Ct. at 1438. Applying these principles, we find the error harmless.

■ Virtually everything that Officer Fredrick said on the witness stand was corroborated by Officer Horne or Officer Hyatt.[5] Thus, even if McGriff's counsel had been permitted to ask about the alleged threat, and even if the jury had discounted Officer Fredrick's testimony as a result, the evidence against McGriff would have remained largely the same. Considering the corroborating testimony and the general strength of the government's case, we are satisfied that McGriff would have been convicted even without Officer Fredrick's testimony.[6] We therefore conclude that the error was harmless beyond a reasonable doubt.

### III

McGriff maintains that the police officers' testimony that the vehicle in which he was a passenger was speeding and ran several red lights was inadmissible under *Drew v. United States*, 118 U.S.App. D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964), and its multitudinous progeny. The trial court ruled, however, that the evidence about the traffic violations was admissible under the *Toliver*[7] exception to *Drew*. We agree with the trial court.

■ *Drew* holds that evidence of other crimes committed by the defendant is generally inadmissible in a criminal trial to prove the defendant's guilt. "It is also the law, however, that evidence of criminal conduct by the defendant at a time and place close to the crime for which the defendant is on trial 'is admissible when relevant to explain the immediate circumstances surrounding the offense charged.'" *Bell v. United States*, 677 A.2d 1044, 1047 (D.C.1996) (quoting *Toliver*, 468 A.2d at 960). This type of evidence is not other crimes evidence, and thus not subject to *Drew* analysis, "because it is too intimately entangled with the charged criminal conduct." *Toliver*, 468 A.2d at 960. It is therefore admissible "to complete the story of the crime on trial by proving its immediate context." *Id.* (citation omitted).

■ The testimony about the police pursuit of the Blazer fits easily within *Toliver*.

---

5. While Hyatt did not see the gun being thrown from the car window, he recovered it from the place where the other officers had told him to look for it.

6. We could not find harmless error in *In re S.H.*, 570 A.2d 814 (D.C.1990), on which McGriff re-

lies, because in *S.H.* the only other eyewitness to a killing—*i.e.*, other than the witness as to whom cross-examination for bias had been precluded—was the decedent's mother. *See id.* at 817 n. 12.

7. *Toliver v. United States*, 468 A.2d 958 (D.C. 1983).

The jury was entitled to hear why the officers chased and stopped the Blazer in order to assess that stop in its full factual context. The trial court correctly observed that the jury would not have understood what happened if the government had been required to begin its story at the moment when the officers saw the object being thrown from the window of the Blazer. *See Green v. United States,* 440 A.2d 1005, 1007 (D.C.1982). McGriff's *Drew* argument is entirely without merit because *Toliver,* not *Drew,* governs this case.

## IV

McGriff argues that the trial court failed to impose a sufficient sanction for two asserted violations of the Jencks Act, 18 U.S.C. § 3500 (1994). He claims that the government failed to produce a written traffic ticket which Officer Fredrick may have issued to Harris for not having a front license plate, and failed to produce timely a recording of a police radio broadcast about the recovery of the gun.

On cross-examination, Officer Fredrick stated that he could not recall whether he had issued Harris a ticket, but that if he had, it would be in the files of the United States Attorney's office. The prosecutor then told the court that she did not have such a ticket in her files, noting that traffic tickets are usually kept in the office of the Corporation Counsel, not the United States Attorney.

Concerning the radio transmission, Officer Horne testified on cross-examination that Officer Hyatt's communication to the other officers that he had found a gun was on a recorded channel. When defense counsel said that the tape had not been produced to him, the prosecutor indicated that the tape had always been available to counsel but that it was of a very poor quality. Defense counsel asked the court to prohibit the prosecutor from using the tape. The court granted the request and further instructed the prosecutor to turn over the tape to the defense.

The Jencks Act imposes an affirmative duty upon the government to preserve statements of its witnesses and, on motion of the defendant, to disclose and produce those statements. The Act defines "statement" as either "a written statement made by [a] witness and signed or otherwise adopted or approved by [the witness]" or a "recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by [a] witness and recorded contemporaneously with the making of [the] oral statement." 18 U.S.C. § 3500(e)(1) & (2).

The applicable law is well settled. Although the Jencks Act requires the government to preserve and disclose statements of its witnesses, "a violation of the duty to preserve which results in the loss of discoverable statements does not automatically require the imposition of sanctions." *Slye v. United States,* 602 A.2d 135, 138 (D.C.1992) (citations omitted). "[T]he administration of the Jencks Act must be entrusted to the 'good sense and experience' of the trial judges subject to 'appropriately limited review of appellate courts.'" *United States v. Augenblick,* 393 U.S. 348, 355, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969) (citation omitted). Even though the Jencks Act provides for sanctions when the statement of a witness is not produced, the choice of a sanction is entirely within the trial court's discretion, as is the decision whether to impose any sanction at all. We will not reverse a trial court ruling under the Jencks Act unless that discretion has been abused. *Jones v. United States,* 535 A.2d 409, 411 (D.C.1987).

In this case we can find no abuse of discretion in the trial court's imposition of limited Jencks Act sanctions. The government's failure to produce the traffic ticket was not deliberate, nor was the ticket withheld for an improper purpose. In the first place, it was never actually established that such a ticket had even been written; Officer Fredrick had no recollection of it, and Harris did not testify at all. Furthermore, McGriff did not suffer any prejudice from the government's failure to produce the putative ticket; indeed, the government's case would probably have been strengthened if the ticket had actually been introduced into evidence. Assuming without deciding that the traffic ticket was a "statement" within the meaning of the Jencks Act, and assuming further that it even existed, McGriff was not prejudiced by the government's failure to produce it.

██ Likewise, we find no abuse of discretion with respect to the government's tardy production of the police tape. The court granted McGriff's request to preclude the government from using the tape, and it was never introduced into evidence or played for the jury to hear. The government turned the tape over to defense counsel during trial. Counsel told the court that he would listen to the tape and recall Officer Hyatt if necessary, but he never did so. While the government should have produced the tape earlier, we can see no prejudice to the defense resulting from its late delivery. We hold that the trial court did not abuse its discretion by failing to impose additional sanctions on the government, and that the limited sanction which the court did impose was both reasonable and sufficient.

## V

McGriff contends that two statements made by the prosecutor during her closing argument so inflamed the passions and prejudices of the jury that his conviction must be reversed. First, at the conclusion of her closing argument, the prosecutor made the following remark:

This is a serious case. A gun is not a toy. Unfortunately, on September 5, 1991, Officer Hyatt found that gun on the sidewalk, and fortunately he found it and it wasn't loaded. And fortunately a child on his or her way to Blow Elementary School did not find it.

McGriff's counsel immediately objected, and the court sustained the objection without comment. The prosecutor then concluded:

The defendants must be held accountable for their actions in this case. And through your verdict you can send them that message that you will not stand for this and that you will not tolerate this in your community. Thank you very much.

At the request of defense counsel, the court then instructed the jury as follows:

I did sustain the objection to the argument that was being made about children potentially finding the gun. This was an event that was supposed to have taken place in the early morning hours.

There is no indication that there were any children out on the street or anything to that effect. Therefore, I sustained the objection, and you should not in any way consider that as part of the argument which I sustained the objection to in deciding this case, so disregard that remark in your assessment of the guilt or innocence of the defendants.

After a short recess, the court *sua sponte* gave an additional instruction concerning the prosecutor's remark about sending a "message":

At the end of the government's argument, there was something to the effect saying that you should send a message to the defendants and return a verdict of guilty.

Well, you have to disregard that remark. It is not your role to send a message through your verdict. Your verdict is representative of a fair assessment of the facts and a decision that is based upon the facts consistent with the law I'm about to give you, that the defendants have been proven guilty beyond a reasonable doubt, or rather that the government has failed to sustain its burden of proving guilt. That's what your role is.

██ McGriff did not ask the court for any further relief, including a mistrial, in response to the prosecutor's two remarks. Now, however, he argues on appeal that the court should have declared a mistrial *sua sponte*. When an appellant argues for a mistrial after having failed to seek one in the trial court, we review the record only for plain error. *See Allen v. United States,* 649 A.2d 548, 556 n. 8 (D.C.1994) (after appellant objected to prosecutor's remark but did not move for a mistrial, "appellant must show plain error in the trial court's failure to *sua sponte* declare a mistrial"). In determining whether there was plain error, this court considers "whether the judge compromised the fundamental fairness of the trial, and permitted a clear miscarriage of justice, by not intervening, *sua sponte*, when the prosecutor made [the challenged] remarks...." *Hunter v. United States,* 606 A.2d 139, 145 (D.C.), *cert. denied,* 506 U.S. 991, 113 S.Ct.

509, 121 L.Ed.2d 444 (1992). We find no plain error.

Although the prosecutor's remarks were improper, they were not so egregious that the court's failure to grant a mistrial compromised the fundamental fairness of the trial or permitted a clear miscarriage of justice. The comment about sending a message, in particular, plainly should not have been made.

> This court has stated repeatedly that an attorney must not ask a jury to "send a message" to anyone.... Juries are not in the message-sending business. Their sole duty is to return a verdict based on the facts before them. Urging a jury to "send a message" is impermissible because it implies that there is a reason to find the defendant guilty other than what the evidence has shown.

*Bowman v. United States,* 652 A.2d 64, 71 (D.C.1994) (citations omitted). Nevertheless, the prosecutor's remarks in this case were isolated comments in an otherwise proper closing argument and were not relevant to the ultimate issue of either appellant's guilt. Furthermore, the trial court gave curative instructions which clearly and immediately informed the jury of the improper nature of the remarks. We are satisfied that these instructions were sufficient to dispel any prejudice, and apparently defense counsel thought so too, since they did not ask the court to take further action. We find no basis for reversal.

## VI

Finally, both appellants contend that the evidence was insufficient to support their convictions. Applying our familiar standard of review,[8] we hold that the evidence was sufficient.

■ Appellants contend that the government's evidence failed to prove that either of them carried a pistol "on or about [his] person," one of the statutory elements of the offense of carrying a pistol without a license. *See* D.C.Code § 22–3204(a). This element can be proven by evidence that the pistol was "convenient of access and within reach" of the defendant. *Brown v. United States,* 58

App. D.C. 311, 312, 30 F.2d 474, 475 (1929); *accord, e.g., Henderson v. United States,* 687 A.2d 918, 920 (D.C.1996); *Waterstaat v. United States,* 252 A.2d 507, 509 (D.C.1969). The charges against these appellants were based on a theory of constructive possession, which the government must establish by proving "knowledge of the presence of the pistol or ammunition *and* the existence of dominion and control over them." *Hill v. District of Columbia,* 264 A.2d 145, 146 (D.C. 1970) (emphasis in original); *accord, e.g., Easley v. United States,* 482 A.2d 779, 781 (D.C.1984).

> Constructive possession may be established by either direct or circumstantial evidence.... Evidence of proximity is sufficient to permit the jury to infer that appellants had convenient access and thus "dominion and control" over the gun[ ].... Knowledge of the gun's presence may be inferred from surrounding circumstances; the government need not offer direct evidence of appellants' knowledge.

*Logan v. United States,* 489 A.2d 485, 491 (D.C.1985) (citations omitted).

In *Logan,* on facts very similar to those in this case, this court held that the evidence was sufficient to prove all three defendants' constructive possession of a gun. The defendants were the driver, the front seat passenger, and the back seat passenger in a car which a police officer stopped after several traffic violations and a high-speed chase. When the car eventually slowed down, the police officers saw the passenger door open and saw a hand drop an unidentified object, which turned out to be a gun, onto the street. We held:

> [T]he circumstances ... suggest that appellants acted in concert. The jury could reasonably find that ... the driver ... pulled the car over and slowed down to permit [the front seat passenger] to open—and hold open—the passenger door (of a two-door vehicle) from the front seat while [the back seat passenger] ... tossed out the gun from the rear, lower portion of the door. We conclude that both knowl-

---

8. *See, e.g., Nelson v. United States,* 601 A.2d 582, 593 (D.C.1991).

edge and control may be inferred from the government's evidence.

*Id.* at 492.

■ In this case McGriff was in the right front seat when the police saw someone throw a dark object the size of a gun from the right front window as the Blazer entered an alley. An officer later found a .44 caliber pistol at that spot, and another officer found matching bullets under McGriff's seat. Although it had been raining off and on for several days, the gun was barely damp, and its holster was only partially wet, suggesting that it had not been lying in the street for very long. From this evidence the jury could reasonably infer that the pistol was the object that the officers saw being thrown from the car, and that it was McGriff who threw it.

Harris was the driver of the car. There is, of course, no *per se* rule that deems all occupants of a motor vehicle to be carrying a pistol when only one of them actually possesses the pistol. *Jackson v. United States,* 395 A.2d 99, 104 (D.C.1978). The circumstances in this case suggest, however, that appellants acted in concert. Because the vehicle was driven in such a manner as to evade the police until the gun could be thrown out the window, the jury could infer that Harris affirmatively participated in trying to dispose of the gun, which means that he was in a position to exercise dominion and control over it. As in *Logan,* the evasive actions of the driver in response to the police, along with his proximity to the gun, was sufficient to prove constructive possession by the driver, *i.e.,* Harris. We see no material difference between *Logan* and this case, and thus we hold that the evidence was sufficient to convict both appellants.

### VII

For the foregoing reasons, the convictions of both appellants are

*Affirmed.*